STATE of Iowa, Appellee,

v.

**Winston Carl HALSTEAD, Appellant.**

No. 83–569.

Supreme Court of Iowa.

Feb. 13, 1985.

---

Charles L. Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Marcia Mason, Asst. Atty. Gen., and Denver D. Dillard, Co. Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, CARTER, and WOLLE, JJ.

UHLENHOPP, Justice.

In this proceeding we review a decision of the Iowa Court of Appeals. The principal issue involves the testimony of a psychiatrist regarding the credibility of a witness, a small boy.

Defendant Winston Carl Halstead moved in with the boy's mother on May 4, 1982. The three lived together until some time in late July, when defendant moved to another woman's apartment in the same complex.

On August 2, 1982, the boy told his babysitter about a sexual attack by defendant. The babysitter immediately informed the mother of the child's statement. The mother asked the boy if the story was true, and he replied that it was. She then took the child to the police station where Detective Robert Parr talked first with the mother and then with the boy. The alleged attack took place some time between June 1 and 30, 1982. About six weeks after the report to the police the county attorney filed an information against defendant.

At trial defendant offered a psychiatrist as a witness to testify regarding the boy's mental condition as bearing on his credibility. The trial court sustained the prosecutor's objections to the testimony.

The jury found defendant guilty of second-degree sexual abuse, the court passed sentence, and defendant appealed.

We transferred the case to the court of appeals, where defendant raised four grounds for reversal. That court rejected the first and third of them, sustained the second one relating to exclusion of the psychiatrist's testimony, and preserved the fourth, regarding ineffective assistance of counsel, for postconviction proceedings.

The State petitioned for further review. We granted the petition.

Of the four issues involved, we are satisfied the court of appeals correctly decided the first and third adversely to defendant, and we find no necessity to address those issues as they involve settled principles of law. The second issue, however, involves a novel legal point and we proceed initially to that question: whether the trial court erred in excluding the testimony of a psychiatrist by whom defendant sought to impeach the boy as a witness, primarily on the basis of subnormal intelligence.

■■■ I. The general rule in this jurisdiction is one of liberality in the admission of opinion evidence. *State v. Hummell,* 228 N.W.2d 77, 82 (Iowa 1975). We have also stated that the decision as to admissibility of such testimony rests in the trial court's discretion, and we will reverse only on a clear showing of abuse of discretion. *Id.* This is a difficult standard to meet. *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982).

■ We agree that a party is entitled to try to impeach a witness' credibility as it is reflected in his ability to observe, remember, or recount. *State v. Harvey,* 242 N.W.2d 330, 336 (Iowa 1976). The question is whether a trial court is required to accept expert testimony regarding a witness' ability in those respects when the substance of the testimony of the expert is that the witness is of subnormal intelligence or another non-organic mental illness, as distinguished from "some impairment of the mental or physical faculties by

injury, disease, or habit...." Annot., 20 A.L.R.3d 684, 689 (1968).

In this case Dr. Luke E. Tsai, who testified extensively regarding the boy's competency at a hearing before the court, sought to testify at trial that the boy had an I.Q. of 84 which is borderline mentally retarded. In addition he sought to testify that the boy had an attention deficit disorder associated with a hyperactive condition and might tell matters that he thought were true but which were untrue.

This court has held that evidence of mental capacity is admissible as bearing on the issue of credibility when the witness was judicially adjudged insane prior to the act which gave rise to the case. *State v. Alberts,* 199 Iowa 815, 202 N.W. 519 (1925). We do not have such facts here.

■ Courts in other jurisdictions are divided on the issue before us, with a majority opposing admissibility. As stated in Annotation, 20 A.L.R.3d 684, 689 (1968):

If ... the characteristic attacked does not involve some organic or mental disorder, or some impairment of the mental of physical faculties by injury, disease, or habit, expert testimony is usually excluded. Exclusion along this line has most frequently occurred with respect to the witness's subnormal intelligence or weak memory ... and the ability or desire to be truthful.

In our opinion the better rule, however, is that the decision on admissibility should be left to the discretion of the trial court under the circumstances of the particular case, guided by the question of whether the expert's opinion will be helpful to the jury in performing its function. *Lamazares v. Valdez,* 353 So.2d 1257, 1258 (Fla.1978); Annotation, 20 A.L.R.3d 684, 689 (1968); *see also State v. Klueber,* 81 S.D. 223, 229, 132 N.W.2d 847, 850 (1965); Juviler, *Psychiatric Opinions as to Credibility of Witnesses: A Suggested Approach,* 48 Cal.L. Rev. 648 (1960).

■ This is not a case that required the trial court to admit the testimony. Dr. Tsai's testimony added nothing that was

not or could not have been brought out by examination of the child as a witness. Additionally, nothing that he related as to the boy's credibility was beyond the common understanding of the jury.

Following a period of testing of the child done by others, Dr. Tsai evaluated the child in a twenty- to thirty-minute meeting at the request of the child's school, an evaluation unrelated to the case at bar. After establishing Dr. Tsai's qualifications, defense counsel questioned him as to what he recalled about the boy. The doctor stated that the child was hyperactive, and had an "undersocialized aggressive conduct disorder" and an I.Q. of 84 or 85 which would be classified as borderline mental retardation. Counsel then asked Dr. Tsai specifically as to the effect of hyperactivity on the boy's ability to answer questions. Dr. Tsai replied:

> I believe it depends on the nature of the questions. It is not because of the short attention. The major problem is with his ability to understand the questions, that's more important, and if the question is not too long, or if the answer is not to be too long, then he should be able to answer.

Defendant then sought to establish that the boy had a very limited understanding of the concept of time. Dr. Tsai answered affirmatively that the child had difficulty with time. Defendant also raised this point, however, on cross-examination of the boy at trial, and established beyond question the boy's difficulty in this regard. We are at a loss to see what an expert opinion would add on this point.

Defendant then questioned the doctor about the boy's regard for school, and Dr. Tsai recalled that the boy had told him his teachers beat him up. Dr. Tsai testified, however, that he spoke only incidentally to a teacher about the remark and the teacher registered surprise at hearing it. He did not inquire further of the boy what the boy meant by the statement. He stated that he placed little weight on this point.

Defendant's attorney then engaged in the following colloquy with Dr. Tsai:

Q. When you were interviewing [the boy] did you make clear to him that it was important that he give you truthful responses to your questions? A. No. usually we don't do that. In our practice we try to make the child as comfortable as relaxed as possible, and we try just— my style, you see, is just kind of a chat with the child, so we are not involving, investigating things, so we just usually conduct it in a conversational style, and take from there what we combine with other information to make a judgment, so I did not specifically tell him that you have to tell me the truth, or it's very important that you tell the truth. The practice over there is somewhat different to the practice in other circumstances.

Q. Did you report, in connection with this investigation, that you believed that [the boy] was lying, specifically in connection with the claim that his teachers beat him up, and that this lying was a form of attention-getting behavior? A. I'm not sure about that, about that particular question, whether he say that to get attention.

Q. Do you have an opinion, having examined him, whether it was a form of attention-getting behavior? A. This is an area I usually would try not to make any kind of theoretical suggestion about, if they have to do this. In other words, it is something that when it's clear, you know, the child is doing things, but in this particular question I would tend to say that's just, say that out of, because of poor controlling of his impulses, impulsive thinking, that's the reason, but that's not necessarily; maybe I shouldn't say that. I'm not sure, in other words.

Q. From your personal examination of [the boy], and based upon your training and experience, do you have an opinion whether [the boy] is capable of telling the truth if he promises to do so? ... A. Okay. At this age the child may tell you Yes, I'm telling you the truth, but they have problems with their memory, and they have problems in their communicative ability, or functioning, in terms of

whether he really understands it is true or not, because through the time kids may act out a lot of fantasy thinking in their memory, and the longer the time span, the more difficult for them to differentiate whether it is truth or fantasy, so in this particular case, if I may say, I would say at this point, if you want him to say something, you say "You have to say the truth," and he may say, "Yes, I would do that", but the statement he made may not be exactly, the story may not be the same he told other people six months ago.

Q. Do I understand that to mean that —I'm sorry. Do I exactly understand you to be saying that even if [the boy] fully intends to tell the truth, and fully believes that he is telling the truth, you having examined him, apparently believe that he may, in fact, reciting an incorrect memory or a fantasy? A. I would say there is a possibility there.

What emerges from Dr. Tsai's testimony is that children generically have difficulty with the concepts of reality versus fantasy and truth versus falsehood. Dr. Tsai stated that this child, likewise, has these difficulties.

On cross-examination, the State attempted to clarify the problem. Dr. Tsai said that he could not state that the child would not tell the truth, and that if spoken to in simple, short sentences using simple words, the boy would probably tell what he believed was truth. Additionally, the doctor stated that he had not questioned the boy about the alleged abuse and had no opinion as to whether it was true or not.

The trial court aptly stated the situation when it refused to permit Dr. Tsai to testify:

It's my finding here that to allow Dr. Tsai to testify would be to a large extent invasion of the province of the Jury. The only thing that Dr. Tsai could really key on is whether or not he thought [the boy] was telling the truth and that's clearly a jury function, and as stated in *Harvey* [242 N.W.2d 330], the witness stands before the jury. It's for them to judge his credibility as they see fit. I don't feel that [the boy's] capacity to observe an event, or to communicate that event, or to tell the truth, or to maintain a clear recollection of what happened in the meantime, is such that we need expert testimony to define that for the jury. I think that's a jury function and they'll have to determine the truth of his testimony. I'll not allow Dr. Tsai to testify. I don't think that hyperactivity and these types of things are that significantly different than any other six or seven-year-old that it warrants a psychiatrist to come in and tell those things. Your motion will be overruled. I'll not allow Dr. Tsai to testify.

We construe the court's remarks as holding that Dr. Tsai's testimony would have been superfluous. *See Hegtvedt v. Prybil*, 223 N.W.2d 186, 189–90 (Iowa 1974). We have examined Dr. Tsai's testimony at length, and we find no abuse of discretion by the trial court. In fact, anything that Dr. Tsai would have testified to was either abundantly clear from knowing children or hearing the child's testimony from the stand. The only conceivable advantage to defendant is to have a recognized expert state what is readily apparent to the jury and thus possibly make the subject seem more important than the jury found it to be.

II. The fourth issue is whether defendant was denied effective assistance of counsel by counsel's failure to object and thus preserve error when the prosecutor elicited the name of the defendant from the babysitter, mother, and detective in violation of the court's ruling on a motion in limine.

■ Defendant is not entitled to perfect representation, but only to that which is within the range of normal competency. *Karasek v. State*, 310 N.W.2d 190, 191, 192 (Iowa 1981). We presume that counsel is competent and the test is whether, under the entire record and totality of the circumstances, counsel's performance was within the range of normal competency. *Snethen v. State*, 308 N.W.2d 11 (Iowa 1981). Rarely do we find failure to preserve error to be

sufficiently egregious to deny defendant his right to the effective assistance of counsel under the sixth amendment to the United States Constitution. *See State v. Goff,* 342 N.W.2d 830 (Iowa 1983); *Meier v. State,* 337 N.W.2d 204 (Iowa 1983); *State v. Hrbek,* 336 N.W.2d 431 (Iowa 1983); *State v. Schoelerman,* 315 N.W.2d 67 (Iowa 1982); *State v. Hendren,* 311 N.W.2d 61 (Iowa 1981). These cases concerned the failure to participate actively in the trial, misadvice concerning mandatory minimum sentence prior to guilty plea, failure to address the question of voluntariness of inculpatory statements, and failure to object to marshalling instructions in kidnapping case omitting the specific intent element. Counsel's failure to object in this case does not rise to that level of egregiousness.

We affirm the rulings of the trial court on every issue, and vacate the decision of the appellate court on the second and fourth issues.

DECISION OF THE COURT OF APPEALS VACATED.

JUDGMENT OF DISTRICT COURT AFFIRMED.