Sherman Junior WHITE,
Plaintiff-Appellant,

v.

STATE of Iowa, Defendant-Appellee.

No. 2–69178.

Court of Appeals of Iowa.

Oct. 29, 1985.

Clemens Erdahl, Iowa City, for plaintiff-appellant.

Thomas J. Miller, Atty. Gen.; Steven K. Hansen, Asst. Atty. Gen.; and Realff H. Ottesen, Asst. Co. Atty., for defendant-appellee.

Heard by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

Petitioner appeals from a denial of postconviction relief, asserting: (1) that a statement made to police was involuntary, that the prosecutor's reference to the statement denied him due process, and that trial counsel's failure to prevent reference to the statement denied him effective assistance of counsel; (2) that various instructions were not supported by the evidence, improperly stated the law concerning the required mental state, and improperly allowed conviction without unanimity concerning a theory of guilt, and that failure to adequately raise instructional issues at trial and on appeal denied him effective assistance of trial and appellate counsel; (3) that the evidence was insufficient to support the jury's guilty verdict and that trial counsel was ineffective due to a fail-ure to adequately challenge certain identification procedures; and (4) that juror misconduct deprived him of constitutional rights and he was denied effective assistance by counsel's failure to adequately present to the trial court evidence of the misconduct.

Petitioner White was convicted in 1972 on the following charges arising out of a tavern robbery in which three persons were killed: three counts of robbery, three counts of first-degree murder, and two counts of assault with intent to commit murder. The convictions were affirmed in a direct appeal which, inter alia, raised an issue concerning juror misconduct. *State v. White*, 223 N.W.2d 173 (Iowa 1974). Application for postconviction relief was filed in 1975 but the matter was not tried until 1982. The application was denied in 1982. On limited remand from the supreme court an additional evidentiary hearing was held, following which the district court again reaffirmed the convictions. Initial postconviction appellate counsel was permitted to withdraw after filing a motion pursuant to Iowa Appellate Procedure Rule 104 but the appeal was not dismissed.

Petitioner's theory at trial was that his participation in the robbery was coerced and that he had not harmed or killed any of the victims. During cross-examination of White, the prosecutor referred to a statement he had made to police which had earlier been the subject of a suppression motion. The trial court had ordered that no reference be made to the statement until after the suppression hearing, but no such hearing was held and defense counsel did not pursue the issue of its admissibility. It was unclear whether White assisted in the shootings or assaults but a surviving victim identified him and gave testimony concerning his participation in the holdup.

In the postconviction proceedings it was alleged that trial counsel failed to adequately and vigorously challenge admissibility of the testimony as having been derived from a suggestive lineup procedure. It was also alleged that trial and appellate counsel failed to adequately contest several

jury instructions on three grounds: (1) that they were without evidentiary support; (2) that they improperly stated the law concerning the required mental state; and (3) that they improperly allowed convictions without unanimity concerning a theory of guilt.

The trial court overruled a motion for mistrial based on misconduct alleged to consist of a juror's acquaintance and conversation with a sister of one of the murder victims. The supreme court affirmed this ruling. In the postconviction proceedings it was alleged that ineffective assistance resulted from trial counsel's failure to present evidence showing that the circumstances of the misconduct differed in some respects from the circumstances as they were represented to the trial court and, subsequently, the appellate court.

▮ To succeed on a postconviction relief appeal, petitioner must show: (1) cause for not having raised the ground previously and (2) actual prejudice resulted from these errors. *Polly v. State,* 355 N.W.2d 849, 855–56 (Iowa 1984). Sufficient cause can be demonstrated by showing the petitioner received ineffective assistance of counsel.

▮ To prevail on an ineffective assistance of counsel claim, petitioner must establish: (1) that counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment, and (2) that the deficient performance so prejudiced the defense as to deprive the petitioner of a fair trial. *State v. Losee,* 354 N.W.2d 239, 243 (Iowa 1984) (*citing Strickland v. Washington,* 466 U.S. 668, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). It is not necessary that "a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the petitioner makes an insufficient showing on one." *Strickland,* 466 U.S. at ——, 104 S.Ct. at 2069–70, 80 L.Ed.2d at 699; *accord Taylor v. State,* 352 N.W.2d 683, 685 (Iowa 1984). A petitioner is not entitled to perfect representation, but only to that which is within the range of normal competency. *State v.*

*Halstead,* 362 N.W.2d 504, 508 (Iowa 1985); *Karasek v. State,* 310 N.W.2d 190, 191–92 (Iowa 1981). With these rules in mind, we address the merits of this appeal.

## I.

▮ Petitioner maintains that a signed, inculpatory statement he made during a police interview on March 9, 1972, was involuntary because it was induced by an alleged promise of leniency. Therefore, according to White, the statement should have been suppressed. At the time of this incident, petitioner was seventeen and lived with an older sister. He turned eighteen shortly after his arrest and had been previously arrested. His guardian, however, was not contacted before the questioning. Petitioner claims that an officer gave him the impression that the police felt he did not kill anyone and he could not be prosecuted for murder. White gave the statement and apparently thought robbery was the most serious charge he faced. Petitioner's signed statement does not indicate that a promise of leniency was offered and a police officer testified such promise was not made at any time. This supposed promise of leniency was not communicated to his trial counsel until the morning of trial.

Our review of issues involving involuntary statements is based on the totality of the circumstances. *State v. Kase,* 344 N.W.2d 223, 225 (Iowa 1984). Petitioner cites *Kase* for the proposition that involuntary statements, induced by promissory leniency, are inadmissible. *Kase* is distinguishable because uncontroverted testimony indicated that a promise was made to induce the signed statement. Absent petitioner's assertions, there is simply no evidence in this case that a promise of leniency was made by the police. Iowa authority provides:

An officer can ordinarily tell a suspect that it is better to tell the truth. The line between admissibility and exclusion seems to be crossed, however, if the officer also tells the suspect what advantage

is to be gained or is likely from making a confession.

*State v. Hodges*, 326 N.W.2d 345, 349 (Iowa 1982). In *Hodges*, the defendant was told that police officers thought he committed the homicide and was expressly informed that a confession offered a *"much better chance of him receiving a lesser offense that first degree murder." Id.* (emphasis in original). Even if the police told White that they did not feel he killed anyone, this case presents no similar evidence of any undue promise of leniency being made by the police. We hold that the statement was voluntarily given because it was not induced by a promise of leniency; thus, counsel was not ineffective for failing to object to use of the statement.

## II.

Petitioner raises several contentions involving the adequacy of the jury instructions.

■ First, White claims the marshalling instructions regarding the assault with intent to commit murder charge were flawed. Petitioner's position is that the assault with intent to commit murder instructions impermissibly removed the burden of proof from the State because the jury had to presume defendant's mental state was the same as the principal's regardless of defendant's knowledge. We find no merit to this claim.

The aiding and abetting instruction reasonably provided that White must have had prior knowledge of the principal's commission of the charged offense to be convicted. The record indicates petitioner knew witnesses might be shot. Moreover:

> We have long held, and it is the general law of this nation, that an accessory is responsible for everything done by the principal that is incidental to carrying out the illegal act—even though the injury was greater than planned. [*State v.*] *Lyons*, 202 Iowa [1195] at 1197, 211 N.W. at 702-03. Our law, which holds an accessory responsible for joint criminal conduct, does not violate the accomplice's due process right. Accomplice lia-

bility is not akin to the evidentiary or procedural presumptions that are condemned in *Sandstrom [v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1975)]; rather, it is a matter of substantive law that places responsibility on a wrongdoer for the direct and indirect consequences of his joint criminal conduct with another. The State, through the enactment of laws, has a right to prescribe the nature of the acts that constitute criminal conduct.

*Conner v. State*, 362 N.W.2d 449, 456 (Iowa 1985). The jury instructions, as given in 1972, suffer from no constitutional infirmity.

Secondly, petitioner asserts the jury instructions relating to the first-degree murder conviction violated due process principles because a mandatory presumption was created that defendant had malice aforethought upon certain preliminary findings. We believe White's argument is misplaced because *Conner* unequivocally addresses this issue. The instructions did not create a presumption of malice aforethought so as to relieve the State of its burden of proof.

■ Thirdly, petitioner submits that the jury instructions did not require the jury to reach unanimity of any proposed theory. Unanimity is reuqired on the issue of whether a defendant committed the crime as charged, but does not require unanimity as to the mode of commission of the crime. *State v. Bratthauer*, 354 N.W.2d 774, 776 (Iowa 1984). An argument similar to White's was also rejected in *State v. Williams*, 285 N.W.2d 248, 269-70 (Iowa 1979), *cert. denied*, 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980), and *State v. Duncan*, 312 N.W.2d 519, 523-24 (Iowa 1981). We are not persuaded by petitioner's argument that *Williams* and *Duncan* are inapposite because in those cases substantial evidence did not support submitting two theories in which the jury could find defendant personally killed one or more victims. On the contrary, the evidence as to the events which transpired inside the tavern was primarily circumstantial. While White consistently maintained he did not

participate personally in killing any of the victims, a factual basis did exist from which a jury could infer that he did participate. The statement petitioner relies upon to show the trial judge felt no factual basis existed to find he personally killed any of the victims was taken out of context. The trial judge was referencing her comments to the proposed coercion instruction and not to the merits of the marshalling instructions for the murder charges.

█ Based on the preceding discussion of the jury instructions, we find no merit in White's claim regarding failure to take exception to certain instructions resulting in ineffective assistance of counsel be rendered at trial and on appeal. Even if the instructions had misstated the law, we would hold that sufficient evidence supported all of the charges of which petitioner was convicted so as to preclude any resulting prejudice under *Losee.*

### III.

█ Petitioner further submits that there was insufficient evidence of his guilt to support the convictions. The petitioner's defense was a coercion theory in which he sought to establish that one of the codefendants intimidated him so much that he unwillingly participated in the events which transpired.

While the coercion defense was credible, given White's testimony, we find ample evidence in the record to support the conviction. The jury could readily find that petitioner aided and abetted a robbery which, under these circumstances, could also result in a felony murder and assault with intent to commit murder verdict. Despite petitioner's contentions, the jury's decision that defendant was not coerced into partaking in the tavern incident was well-supported by the record.

Petitioner next attacks certain identification testimony offered by a witness of the crime and his counsel's failure to suppress such evidence. We find petitioner's claims unwarranted. White admitted that he stood at the entrance to the tavern so that his presence was never an issue. The iden-

tification testimony was not sufficiently detrimental to petitioner's case, in any event, because his defense was based on a coercion theory.

### IV.

█ Petitioner's final claim involves juror misconduct. One juror had conversations with a sister of one of the victims at some point in time during the proceeding. Trial counsel raised the juror misconduct issue; however, it was ruled that no misconduct existed. This ruling was affirmed on appeal. *See State v. White,* 223 N.W.2d at 176. White now attempts to show that trial counsel was ineffective for failing to further investigate certain inconsistencies involving testimony on the juror misconduct issue.

Trial counsel raised this issue on direct appeal and, while petitioner's brief indicates certain aspects of this issue could have been handled more favorably for petitioner, we are unwilling to find that trial counsel's conduct was outside the bounds of normal competency. Despite the inconsistencies highlighted by White, even at this juncture, conflicting testimony persists as to when the conversation occurred and whether the juror's judgment was skewed as a result of the conversation. The facts as developed initially by trial counsel indicate that he did function as "counsel" guaranteed by the sixth amendment.

We, accordingly, affirm petitioner's conviction of all charges.

AFFIRMED.