Gary Randall BEAR, Petitioner–Appellant,

v.

STATE of Iowa, Respondent–Appellee.

No. 85–1301.

Court of Appeals of Iowa.

Oct. 28, 1987.

Stephen J. Rapp, Waterloo, for petitioner-appellant.

Thomas J. Miller, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen. and Scott Lemke, Asst. Co. Atty., for respondent-appellee.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ. SNELL, J., takes no part.

DONIELSON, Judge.

Petitioner, Gary Randall Bear, appeals ˙ from a denial of postconviction relief. We affirm.

In 1980 a man assaulted a woman after she left a Waterloo bar. The police investigation pointed to Bear. At trial, the victim identified Bear as the person who had abducted and raped her as she was returning home late one evening. Bear presented an alibi defense. He was convicted after a bench trial for first-degree kidnapping and sentenced to life imprisonment. The conviction was affirmed on direct appeal in a 1982 unpublished per curiam opinion. *State v. Bear*, 324 N.W.2d 727 (Iowa 1982). Bear brought an action for postconviction relief which was denied by the district court. He appeals from that decision, alleging his convictions were obtained in violation of various federal and state constitutional guarantees.

Postconviction relief actions pursuant to Iowa Code Chapter 663A are law actions and are ordinarily reviewed only on error. *Schertz v. State*, 380 N.W.2d 404, 408 (Iowa 1985). However, when there is an alleged violation of a constitutional safeguard, we will make an independent evaluation of the totality of the circumstances under which the postconviction ruling was made. *Polly v. State*, 355 N.W.2d 849, 854 (Iowa 1984); *Thomas v. State*, 316 N.W.2d 182, 183 (Iowa App.1981).

**I. Exculpatory Evidence.** Bear first argues that he is entitled to postconviction relief upon the grounds that the State withheld exculpatory evidence. Specifically, he contends the State (1) wrongfully withheld a statement made by a bar patron, a map of the bar prepared by the bartender, and photographs of tire tracks; and (2) failed to adequately test hair found on the victim's clothing and, in addition, tampered with the evidence consisting of the hair samples. The State argues that these alleged errors were not preserved for appeal because they were not raised on direct appeal.

Iowa Code section 663A.8 provides:

All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not raised, or knowingly, voluntarily, and intelligently waived in the proceeding that resulted in the conviction or sentence, or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

In accordance with this section, any claim not properly raised at trial or on direct appeal may not be litigated in postconviction proceedings unless the applicant has provided a sufficient reason for not properly raising it previously. *Washington v.*

*Scurr*, 304 N.W.2d 231, 234 (Iowa 1981). The applicant must additionally show that he or she has suffered actual prejudice resulting from the alleged trial court errors. *Polly*, 355 N.W.2d at 855. "It is not sufficient that the applicant demonstrate the errors created a possibility of prejudice, he or she must shoulder the burden of showing they worked to his or her actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *Id.* It is thus clearly the view under Iowa law that a postconviction proceeding is not an avenue for litigating issues that were not properly preserved for our review.

■ A review of the record discloses that the issues Bear now asserts were not raised on direct appeal. Consequently, we need to address (1) whether Bear had a sufficient reason for not properly raising these issues previously and (2) whether Bear suffered actual prejudice resulting from the alleged errors.

Bear alleges the State improperly withheld the statement of a bar patron who, upon seeing a composite picture of a suspect that was prepared from the victim's memory, "somewhat" recalled "a man fitting that general description sitting at the bar during that night but could never swear that this was the same person." Bear also alleges the State improperly withheld photographs of tire tracks where the assailant released the victim from a truck. He further asserts that no attempt was made to compare those tracks with the tires on Bear's truck.

■ Bear admits in his brief that the bar patron's statement and the tire-track investigation were referenced in police reports available during the trial. He has provided no reason as to why he did not properly raise these issues before now. Furthermore, we find Bear has not met his burden to prove he was prejudiced. The bar patron's statement was equivocal; the photographs taken were of such poor quality they were considered worthless. The statement and photographs do not appear to be favorable to Bear as they were inconclusive.

Bear also alleges the State withheld a map of the bar, prepared by the bartender, showing the location of various persons in the bar with an "X" placed on the map. Bear contends that the "X" marked the location of the assailant and that no attempt was made to find Mr. "X." Bear states that the reason this issue was not raised on direct appeal was because the existence of the map was not known until the postconviction trial.

■ We find that the map with an "X" on it was inconclusive and immaterial as to Bear's defense. It was a part of the State's investigation which supported neither the State's nor Bear's positions.

Evidence is material "only if there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceedings would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481, 494 (1985). We find the map was merely potentially helpful to the defense and was therefore immaterial. *State v. Hall*, 249 N.W.2d 843, 846 (Iowa 1977), *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977).

The State is not required "to make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed. 706, 713 (1972); *see Bagley*, 473 U.S. at 675, 105 S.Ct. at 3380, 87 L.Ed.2d at 489; *see also United States v. Jackson*, 579 F.2d 553, 560 (10th Cir.1978), *cert. denied*, 439 U.S. 981, 99 S.Ct. 569, 58 L.Ed.2d 652 (1978) ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of trial, does not establish 'materiality' in the constitutional sense"). We find no error occurred in withholding the map; no prejudice was suffered by Bear.

A Department of Criminal Investigation test compared known samples of Bear's pubic hair with hairs alleged to be his. Results were inconclusive. Bear was not informed of a second test conducted after the conviction or provided with the results, which the postconviction court later charac-

terized as cumulative and inconclusive at best in the order denying postconviction relief. Bear contends "no effort was made to develop evidence that the hairs of a third person were on the victim's clothing" and that he was "denied the aid of the full and accurate testing which *could have been* exculpatory" (emphasis added). Bear states that the reason this issue was not raised on direct appeal was because the existence of a second test was not known by Bear until one year after the direct appeal.

■ The State argues, and we agree, that the State is not required "to create exculpatory evidence that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir.1980). We note the second testing occurred a year after trial; the State did not have the results at the time of trial. The State's decision to further test the hair samples did not amount to withholding evidence. We do not find that such inconclusive evidence was exculpatory.

■ Bear also alleges the police tampered with the evidence (hair samples). From Bear's brief, we can find no support for this contention. The chemist's report on the hair comparison points out that "evidence strongly suggests that the hairs on both slides have also been obtained from one person, with the *possible* exception of one hair ..." (emphasis added). This statement does not bear out that the police tampered with the evidence nor provide support for Bear's alleged factual premise that the report "clearly shows that one of the hairs" was not Bear's.

Bear concedes further testing *"could have been exculpatory"* (emphasis added). We find this language equivalent to saying further testing was "merely potentially helpful to the defense," and, as such, is not material, with no error having occurred. In *State v. Bear*, No. 67133, slip op. at 5 (Iowa, filed August 25, 1982) [324 N.W.2d 727 (table)], Bear alleged on direct appeal that he had been denied a fair trial because the State failed to produce a copy of the victim's statement prior to trial. The supreme court found no error and stated:

The principles controlling this issue also are well established. Where exculpatory material is provided during the trial, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), ordinarily are not involved. *State v. Epperson*, 264 N.W.2d 753, 757 (Iowa), *cert. denied*, 439 U.S. 913, 99 S.Ct. 285–86, 58 L.Ed.2d 260 (1978). Not all material in an investigative file is *Brady* material that must be disclosed upon request. *State v. Hall*, 297 N.W.2d 80, 92 (Iowa 1980), *cert. denied*, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981). To constitute a deprivation of due process, suppressed evidence "must be material either to the guilt or punishment of the defendant, not merely potentially or inferentially helpful to the defense." *State v. Hall*, 249 N.W. 2d 843, 846 (Iowa), *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977).

*Bear*, slip op. at 4–5. Further testing of the hair samples was only inferentially helpful to Bear. We find no prejudice to Bear resulted.

We find that had any of the foregoing items of evidence not been "withheld," the outcome of Bear's trial would have been the same. There was sufficient evidence on which to base Bear's conviction.

**II. Newly-Discovered Evidence.** Bear next contends he is entitled to postconviction relief on the grounds of newly-discovered evidence. He concedes that the bar patron statement and the tire track investigation may not fall in the category of newly-discovered evidence because they were available at trial. However, he asserts that the evidence regarding the inconsistent hair sample (revealed a year after the direct appeal was decided) and the map of the bar (disclosed at the postconviction trial), previously discussed under section I of this opinion, should be properly considered newly-discovered evidence.

To prevail on a motion for new trial or postconviction relief on a claim of newly-discovered evidence, it must be shown (1) that the evidence could not have been discovered earlier in the exercise of due dil-

igence; (2) that the evidence is material and not merely cumulative and impeaching; and (3) that its admission would probably change the result if a new trial were granted. *Stanford v. Iowa State Reformatory,* 279 N.W.2d 28, 32–33 (Iowa 1979); Iowa R.Crim.P. 23(2)(b)(8).

■ Based on our case law that the evidence needs to be material and favorable to Bear, and in light of our prior discussion under section I of this opinion that we find the map and hair sample issues to be neither material nor favorable to Bear but, rather, inconclusive, we hold that these two items of evidence would not have changed the result of Bear's trial. There was sufficient evidence on which to find Bear guilty. Bear was identified on three occasions by the victim as the assailant: in a photo display, at a lineup, and at trial. We agree with the trial court that Bear's alibis did not stand up to close examination.

### III. Suggestive Identification Procedures.

Bear's third argument is that he is entitled to postconviction relief based upon the grounds that the police used suggestive identification procedures. Bear alleges there was a substantial likelihood of irreparable misidentification of Bear's clothing, vehicle, and physical description. He bases these premises on the facts that (1) the victim's mother was an employee of the police department and allegedly kept the victim aware of the investigation and (2) after the victim initially described her assailant's truck, she viewed Bear's truck on two separate occasions.

■ Bear did not raise this argument on direct appeal nor in his amended and substituted application for postconviction relief. We refuse to rule on this matter since any alleged error was not brought to the attention of the trial court for an opportunity to rule upon this issue. Bear provides absolutely no reason in his brief as to why this issue was not previously raised. We will only consider such issue on appeal when the applicant can demonstrate a sufficient reason for failing to raise the claim earlier. *Washington,* 304 N.W.2d at 234. A postconviction proceeding is not an avenue for litigating issues that were not properly preserved for our review.

### IV. Ineffective Assistance of Counsel.

Bear's last contention is that he is entitled to postconviction relief upon the grounds that he received ineffective assistance of counsel. On appeal from the denial of postconviction relief, it is alleged that trial counsel was ineffective for advising Bear to shave a mustache prior to appearing in a lineup and for failing to challenge the suggestiveness of the identification procedures. It is also alleged that trial counsel was ineffective for failing to investigate more thoroughly with regard to the evidence alleged in this appeal to be exculpatory and/or newly discovered. Bear also asserts that failure to raise ineffective assistance as an issue on direct appeal should be excused when he was represented by trial counsel at that time.

> The trial court found and we agree that: Ordinarily a claim of ineffective assistance must be raised on direct appeal or it will be considered waived. However, since trial counsel and counsel on the direct appeal are one and the same it would not be realistic to expect counsel to raise his own ineffectiveness. *State v. Turner,* 345 N.W.2d 552, [558] (Iowa App.1983). Sufficient reason therefore exists for petitioner to raise this issue in a post-conviction relief application.

The petitioner, in order to prevail on a claim of ineffective assistance of counsel, must show by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Hall v. State,* 360 N.W.2d 836, 838 (Iowa 1985); *White v. State,* 380 N.W.2d 1, 3 (Iowa App.1985). If, however, the petitioner makes an insufficient showing on either prong of the two-part test, we need not address both components. *Id.* In deciding the first prong, we require more than that trial strategy backfired or that another attorney would have prepared and tried the case somewhat differently. *Fryer v. State,* 325 N.W.2d 400, 413–15 (Iowa 1982). The petitioner must overcome a strong pre-

sumption of counsel's competency. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065–66, 80 L.Ed.2d 674, 693–94 (1984). An affirmative factual basis demonstrating the alleged inadequacy of representation needs to be set forth. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980). Defendant has the burden to prove both elements by a preponderance of the evidence. *Sallis v. Rhoads*, 325 N.W.2d 121, 122 (Iowa 1982). Defendant is not entitled to perfect representation, only that which is in the normal range of competency. *State v. Halstead*, 362 N.W.2d 504, 508 (Iowa 1985). In evaluating ineffective assistance claims, it is axiomatic that the fact that the defense was not successful does not mean that counsel was ineffective. *Hall*, 360 N.W.2d at 838.

The United States Supreme Court stated in *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695, the standards by which counsel's performance is to be judged. Concerning counsel's method of investigation of a particular case, the *Strickland* court opined that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. The Court further opined: "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

The *Strickland* court recognized that usually counsel's actions are based on strategic choices made by the defendant and on information supplied by the defendant. *Id.* Specifically, the Court pointed out that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.* Consonant with this view, the Iowa Supreme Court has recognized that the duty to investigate and prepare a defense is not limitless. *Schrier v. State*, 347 N.W.2d 657, 662 (Iowa 1984). "It does not require that counsel pursue 'every path until it bears fruit or until all conceivable hope withers'." *Id.*, citing *United States v. Tucker*, 716 F.2d 576, 584 (9th Cir.1983).

When deciding the second component of a claim of ineffective assistance, we have required the person making the claim to show that counsel's failure to perform an essential duty worked to the client's actual and substantial disadvantage, thereby constituting "a denial of the accused's due process right to a fair trial, a fundamental miscarriage of justice, or an equivalent constitutional deprivation." *State v. Miles*, 344 N.W.2d 231, 234 (Iowa 1984). The crux of the prejudice component rests on whether the defendant has shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2069, 80 L.Ed.2d at 698. The ultimate test is whether under the entire record and totality of the circumstances counsel's performance was within the range of normal competency. *Meier v. State*, 337 N.W.2d 204, 206 (Iowa 1983); *Henderson v. Scurr*, 313 N.W.2d 522, 524 (Iowa 1981).

■ With regard to the issue of Bear shaving his mustache prior to lineup, the trial court found and we agree:

A review of the trial transcript and post-conviction hearing establishes that whereas Mr. Davidson of the public defender's office did tell petitioner he did not have to have his mustache at the lineup it was petitioner's sole choice and action to shave it off.

We find no deficiency with counsel's advice; Bear shaved off his mustache on his own accord. The result would have been

the same had Bear not shaved his mustache: the victim undoubtedly would still have chosen Bear in the lineup.

■ With regard to the other contentions, which included failure by trial counsel to attack the alleged suggestive identification procedures, failure to adequately review the police reports, failure to depose the police officers, and failure to move for a continuance to permit the investigation of such matters, Bear has failed to show that but for such failures, the result of the trial would have been different. We have no reason to think that depositions of the police would disclose anything more than was already encompassed in their detailed reports. The victim unequivocally identified Bear as her assailant on three different occasions. In addition, following our law on this matter, we find counsel need not pursue every path; the duty for counsel to investigate every path isn't without an end. Trial counsel's efforts and decisions on investigation tactics were reasonable and undoubtedly were a product of his judgment after a review of the information before him at the time. We find, after a review of the totality of the circumstances, that trial counsel's performance was within the range of normal competency and that a different outcome would not have resulted if trial counsel, in fact, had committed the alleged professional errors.

■ Postconviction hearing counsel is alleged to have rendered ineffective assistance when he failed to move for a continuance for the purpose of attempting to locate the victim, who had been named in a subpoena but not found when service was attempted. We reject this argument. Bear gives no reason why such testimony would have been material or favorable to him. He makes no showing that the results would have been different had a continuance been moved for and granted.

In *Sims v. State*, 295 N.W.2d 420, 424 (Iowa 1980), the Iowa Supreme Court stated that "[a]s a matter of policy, if defense counsel must weigh every action on the scale of a potential subsequent ineffective counsel claim ... in the end the client's case will suffer." We believe such reasoning is applicable to appellate counsel as well. Sound trial strategy generally dictates that only the most promising issues be raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987, 994 (1983).

The postconviction attorney made a strategic decision not to request a continuance. Because Bear has not shown an affirmative factual basis demonstrating an alleged inadequacy of representation and because Bear has not overcome a strong presumption of counsel's competency, we find Bear received a fair trial; postconviction counsel's performance was within the range of normal competency.

Bear lastly alleges that all previous counsel were ineffective for failing to raise the issue of whether life imprisonment constitutes cruel and unusual punishment as applied to Bear based on the facts of this case. Bear states in his brief:

It is alleged that within an extremely short period of time he picked up an adult female from in front of her home, drove her to another location, raped her, and returned her to her own back alley. But for the transportation it would have been a Sexual Abuse–3rd degree, a Class C felony.

Punishment may be cruel and unusual in violation of the eighth amendment to the constitution because it inflicts torture or is barbaric or is disproportionate to the offense charged. *State v. Robbins*, 257 N.W.2d 63, 68 (Iowa 1977).

■ Because sexual abuse in the third degree, a Class C felony, is a lesser included offense of kidnapping in the first degree, a Class A felony, the trial court voided the ten-year sentence on the sexual abuse in the third degree offense and affirmed the life sentence on kidnapping in the first degree. The issue of whether there was sufficient evidence for a conviction of kidnapping in the first degree, a Class A felony, was already adjudicated in *Bear*, slip op. at 3. Bear recognizes that insufficient evidence is not grounds for postconviction relief. Iowa Code section 902.1 is the sentencing statute for Class A

felonies. Class A felonies carry life imprisonment. We find that the punishment imposed by the trial court consisting of life imprisonment comports with the sentencing standards. In addition, we recognize that lifetime imprisonment is severe; however, we do not consider it too harsh a punishment and find it is within the legislative limits in order to minimize those crimes which carry a Class A felony classification.

We therefore find, based on the totality of the circumstances, that trial counsel's and appellate counsel's performance was within the range of normal competency, Bear not carrying his burden to show counsel's performance was deficient and that any alleged deficient performance prejudiced Bear.

We have considered all issues and claims presented by Bear, and we can find no basis for reversing the judgment of the trial court denying postconviction relief to Bear. The judgment of the trial court is affirmed.

AFFIRMED.