**Eddie Jerome WILSON, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 91–1910.**

Court of Appeals of Iowa.

March 30, 1993.

F. David Eastman of Eastman Law Office, Clear Lake, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., Victoria Barchman, Area Prosecutions Div., and Richard L. Petersen, County Atty., for appellee.

Considered by DONIELSON, P.J., and SCHLEGEL and HABHAB, JJ.

SCHLEGEL, Judge.

The applicant, Eddie Jerome Wilson, appeals the denial of his petition for postconviction relief. He was convicted, following a jury trial, of one count of second-degree sexual abuse for sexually abusing his daughter, and he is serving a sentence not to exceed twenty-five years as a result of the conviction. Wilson brought this action claiming ineffective assistance of trial counsel and prosecutor misconduct. He also alleges ineffective assistance of appellate counsel.

The trial court held that Wilson's trial counsel may have neglected to explore the consequences of the existence of a formerly unknown examining physician, but that a different result would not necessarily have resulted had counsel investigated the disclosure "to its furthest point of discovery." Wilson's trial counsel deposed Wilson's ex-wife, the mother of the children alleged to have been sexually abused. During the deposition, the witness testified the children had only been examined by Dr. Shah, the State's expert witness. In fact, the witness had also taken the girls to Dr. Willson, a pediatrician, for the specific purpose of examining them to determine whether they had been sexually abused.

The record indicates the witness advised the prosecutor of this error, perhaps the evening before Wilson's criminal trial. Wilson's defense counsel was not told of the correction prior to trial. However, during the cross-examination of the children's mother, Wilson's defense counsel did learn that the children had been taken by her to be examined by Dr. Willson in connection with the claimed sexual abuse. Counsel for the defendant (the applicant) did not pursue this information in any manner whatsoever, and it is his failure to do so which Wilson claims constituted ineffective assistance of counsel.

The State contends defense counsel's failure to investigate the earlier examination was a strategic decision and did not constitute ineffective assistance of counsel.

Alternatively, the State claims defendant waived the ineffective assistance claim by failing to raise the issue on direct appeal. However, this issue was fully tried and decided in the postconviction trial court. In addition, the State's contention that applicant failed to preserve this issue is waived since it is being raised for the first time on appeal. The applicant's alternative claim of ineffective assistance of appellate counsel for failing to raise the issues in this case on appeal has also been properly preserved for appellate review.

■ To prevail on a claim of ineffective assistance of counsel, a defendant must establish that: (1) defense counsel breached an essential duty such that counsel was not functioning as "counsel" as guaranteed by the Sixth Amendment; and (2) the deficient performance by counsel so prejudiced the defendant that he was actually deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *White v. State*, 380 N.W.2d 1, 3 (Iowa App.1985). A defendant is not entitled to perfect representation, but rather only that within the normal range of competency. *State v. Halstead*, 362 N.W.2d 504, 508 (Iowa 1985).

■ Having thoroughly reviewed the record in light of these guiding principles, we conclude defense counsel breached an essential duty. Regarding defense counsel's conduct, the postconviction court stated:

With the benefit of "instant replay" it can be accepted that Defendant's counsel could have (a) requested a side bar or in-chambers conference, (b) moved for a continuance, (c) requested opportunity to discover the newly disclosed doctor, (d) moved for a mistrial.

Each and every suggested option is a valid course of action. But in the instantaneous and reflexive context of the trial arena, such choices must be balanced by the primary concern of a defending counsel, namely, what will be the impact upon the jury? Will they attach undue significance if attention is drawn to a matter. *In retrospect and enjoying the benefit of 20/20 hindsight, trial counsel should not have let the matter slide by but should have sought opportunity to investigate the significance of the disclosure.* (Emphasis added.)

The above quoted language from the court's ruling indicates its belief that counsel should have pursued one or more of the alternatives available, upon discovery of the changed testimony. We agree that the failure to pursue one of those alternatives breached an essential duty—the duty of presenting a careful and thorough defense.

The trial court indicated its lack of reliance upon the proper performance of effective counsel when it stated:

This Court's ultimate finding and conclusion that Defendant failed to establish the prejudice component will be dispositive of the instant case.

We hold that the record in this case demonstrates that counsel for the defendant (applicant herein) breached an essential duty by failing to pursue proper inquiry and action when he learned of the second examining physician. We also hold that applicant was prejudiced by that breach.

The trial court, in its ruling denying postconviction relief stated:

The instant record established by the respective doctors' testimonies leads this court to conclude Dr. Shah's testimony would have been unaffected by the examining doctor's testimony.

We believe the trial court misses the significance of Dr. Shah's own testimony at the postconviction relief hearing. Under questioning by counsel for the applicant, Dr. Shah testified as follows:

Q: (By Mr. Eastman) Okay. And in fact in your deposition we took for this hearing today, I asked you about your findings with regard to Stephanie that you saw through the colposcope. And I asked you if those things—had this event occurred before April 19 of 1988, if those things would have been visible to the naked eye at that time. Do you recall your answer? A: No, I don't.

\*    \*    \*    \*    \*    \*

Q: (By Mr. Eastman) What I asked you—it appears on page eleven of the deposition we took.

Question: ... (T)he evidence that was presented at trial, as I understand it, was that the last time Eddie Wilson would have had any opportunity to have assaulted Stephanie would have been in—.

And I think the evidence has been late January or early February that Dianne testified here to today, 1988.

And this exam by Dr. Willson was not done until April of 1988.

. . . .

And then your examination was in late August of 1988.

And what I'm asking you is, with those times in mind and what you saw when you did your exam in late August of 1988, is it reasonable, or possible even, to say that in early April of 1988 those enlarged blood vessels would have been visible to the naked eye, especially given the fact that there was scar tissue there that was visible?

Your answer was:

Yes, there would have been, given that period of time. A: Yes.

Q: Okay. Now, that's still your answer today? A: Yes.

That testimony, elicited from Dr. Shah at the postconviction trial, would have been available at the trial on the sexual abuse charge. In view of Dr. Willson's testimony at the postconviction hearing that she found no evidence of sexual abuse at her April examination, it is reasonable that Dr. Shah's testimony would have raised serious doubts in the jury's deliberations. That testimony would have caused the record to indicate: (1) the last opportunity Wilson had to abuse his daughter was in January or February of 1988; (2) the examination of Stephanie by Dr. Willson revealed no physical evidence of sexual abuse in April 1988; (3) Dr. Shah's testimony that, with what she saw in her examination in August of 1988, the enlarged blood vessels and scarring that she found would have been visible to the naked eye during Dr. Willson's examination in April of 1988; (4) the jury would have been reasonably justified in finding that although there may have been evidence of sexual abuse found by Dr. Shah, they could not find beyond a reasonable doubt that it was committed by applicant.

Consequently, we conclude reasonable grounds exist to believe that had defense counsel pursued the existence of the examination of Dr. Willson, the result would have been different. Because of that potential, Wilson is entitled to a new trial. In summary, we hold that because defense counsel breached an essential duty, and since prejudice to the applicant resulted, the decision of the trial court is reversed, and the case is remanded to the district court for orders consistent with this opinion.

REVERSED AND REMANDED.

DONIELSON, J., concurs.

HABHAB, J., dissents.

HABHAB, Judge (dissenting).

I respectfully dissent. I would affirm the trial court. In doing so, I agree with the trial court's final statement as to appellant's claim of ineffective assistance of counsel: "The conclusion reached by the court in prior discussions is that defendant failed to establish prejudicial ineffective assistance at either the trial or appellate counsel levels."

The majority has set forth the elements the defendant must establish to prevail on a claim of ineffective assistance of counsel. Like the trial court, I believe that the defendant's failure to establish the prejudice component is dispositive of this case.

As it relates to the duty component, after reviewing the entire record, I also agree with the trial court's specific finding that the appellant's claims of ineffective assistance based upon failure to depose the victim, failure to depose the State's expert, Dr. Shah, the decision not to call defendant's alcohol abuse counselor as a witness at trial, or the claimed failure to obtain copies of all medical records of the victim were not established.

As it relates to the failure of the defense to depose Dr. Shah, trial counsel testified at the postconviction hearing that he was "fully confident" he had all the pertinent information which the State intended to adduce. Trial counsel knew the State's medical witness would be Dr. Shah, an acknowledged expert in the field of child sexual abuse. Trial counsel also knew Dr. Shah's testimony would be adverse, but he felt he could deflect or perhaps neutralize her conclusions by cross-examination as to her prior writings.

The test to be applied on a claim of ineffective counsel is "whether under the entire record and totality of the circumstances counsel's performance was within the range of normal competency." *Meier v. State*, 337 N.W.2d 204, 206 (Iowa 1983). I would affirm.