**IN THE COURT OF APPEALS OF IOWA**

No. 13-0354
Filed November 13, 2014


**GLENN L. MCGHEE,**
　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　Respondent-Appellee.
_____


Appeal from the Iowa District Court for Des Moines County, Michael J. Schilling, Judge.


Glenn McGhee appeals the district court's denial of his application for postconviction relief. **AFFIRMED.**


Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Michael J. Walton, County Attorney, and Jerald Feuerbach and Kimberly K. Shepherd, Assistant County Attorney, for appellee State.


Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

In 1972, six men were involved in a robbery at the Shamrock Tavern in Davenport. During the robbery, the bartender and two bar patrons were shot and killed. Three other bar patrons—two who were shot and one who was beaten—survived. Several witnesses implicated McGhee in the incident. McGhee and four co-defendants were charged with three counts of murder, three counts of aggravated robbery, and two counts of assault with intent to commit murder. McGhee was tried separately from the other defendants and the primary theory of his defense at trial was the witnesses' mistaken identification of him as one of the robbery perpetrators.

The jury found McGhee guilty as charged. McGhee appealed, challenging whether the court improperly denied his request for a psychiatric evaluation to determine the feasibility of a not-guilty plea by reason of insanity. The Iowa Supreme Court affirmed the judgment and sentence entered by the district court. *State v. McGhee*, 220 N.W.2d 908, 914 (Iowa 1974).

In 2003, McGhee filed an application for postconviction relief. Over nearly a decade, McGhee was reappointed counsel and his application survived the State's motion for summary dismissal.[1] Despite instruction by the district court, an amended or "recast" application for postconviction relief (PCR) was not filed.

---

[1] Because McGhee's claims were based in part on newly discovered evidence, the district court determined his claim survived summary judgment as an exception to the statutory limitations period. *See* Iowa Code § 822.3 ("[A]pplications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued. However, this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period.").

The district court honed McGhee's claims to include an alleged *Brady* violation[2] with regard to four police reports (Exhibits 2, 3, 4, and 5) which, according to McGhee, were withheld from his trial counsel and were critical to his defense because they related to whether the State's witnesses could identify McGhee as one of the robbery perpetrators.[3] In 2013, following a hearing, the district court entered an order denying postconviction relief to McGhee.

McGhee appeals, contending the district court erred in denying his claim of a *Brady* violation where the police reports at issue were withheld from the defense during his criminal trial and could have been used to impeach the State's witnesses and show "the identification procedures resulting in McGhee's identification were flawed and unduly suggestive." Because McGhee's claims are of a constitutional nature, we conduct a de novo review. *See Aguilera v. State*, 807 N.W.2d 249, 252 (Iowa 2011).

To establish a *Brady* violation has occurred, McGhee must prove by a preponderance of the evidence "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt." *DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011) (citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). At the outset, with regard to Exhibits 2, 3, and 5, McGhee has not proved the first element of the *Brady* analysis. McGhee's trial counsel testified, unequivocally, that he had received and reviewed Exhibits 2, 3, and 5 and had used those police reports in preparation for trial. In light of this testimony by trial counsel, we conclude

---

[2] A *Brady* violation is a due process violation that occurs when the State fails to turn over exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[3] We observe Exhibits 2, 3, and 5 noted eyewitness identifications of McGhee.

McGhee has failed to prove by a preponderance of the evidence Exhibits 2, 3, and 5 were suppressed by the State. *Cf. Aguilera*, 807 N.W.2d at 253 (concluding the defendant had shown suppression of evidence where "Aguilera's first attorney testified he never received the DCI file, an inspection of the public defender's file did not reveal any such DCI file, and the State could not offer any document showing the DCI file had been delivered to Aguilera").

Turning to Exhibit 4, trial counsel testified "in all probability" he did review that police report, but it was "not ringing a bell." In any event, we conclude McGhee did not prove the remaining two elements of the *Brady* analysis with regard to Exhibit 4. Exhibit 4 is a police report dated March 21, 1972, detailing a lineup held before several State witnesses. McGhee, however, was not present at the lineup nor was his photo displayed. When asked if he would have used Exhibit 4 at trial, McGhee's trial counsel testified, "The document does not mention Glenn McGhee. It doesn't purport to be a record of a lineup or lineups that involved him . . . . It doesn't involve any identification—purported identification of Glenn McGhee . . . ." This testimony suggests trial counsel would not have used Exhibit 4 at trial or in preparation for trial. And even if trial counsel could have used Exhibit 4 for impeachment purposes during cross-examination on the issue of which men some of the State's witnesses believed they saw enter the bar prior to the robbery, *see DeSimone*, 803 N.W.2d at 105 ("Impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady* rule."), trial counsel raised similar concerns during other parts of trial. Under these circumstances, we conclude McGhee has failed to prove by a preponderance of the evidence Exhibit 4 was exculpatory and material. For

these reasons, we affirm the decision of the district court denying postconviction relief to McGhee on an alleged *Brady* violation.[4]

McGhee alternatively contends his postconviction counsel was ineffective in failing to better develop the facts relating to his claim of an alleged *Brady* violation. We review this claim de novo. *See Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011) (observing a postconviction applicant "has a statutory, not constitutional right to effective assistance of counsel on postconviction relief," but the court still applies a de novo review). To prevail, McGhee must show (1) a deficiency in counsel's performance, and (2) that the deficient performance prejudiced his defense. *State v. Ross*, 845 N.W.2d 692, 697-98 (Iowa 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Even though these claims are generally preserved for postconviction relief, when presented with a sufficient record this court will address such a claim." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). If we determine the claim cannot be addressed on appeal, however, we must preserve it for a postconviction-relief proceeding,

---

[4] In light of McGhee's heavy reliance on the Eighth Circuit Court of Appeals decision in *White v. Helling*, 194 F.3d 937, 939 (8th Cir. 1999) (granting a new trial to one of McGhee's co-defendants upon holding material exculpatory evidence was withheld from the defense) to support his claim in this case, we feel compelled to note the reasons why McGhee's reliance on *White* is misplaced. First, in *White*, the court determined Exhibits 2, 3, 4, and 5 were withheld from the defense, *see* 194 F.3d at 943 (describing the police reports as "[n]ew evidence, never before revealed"), whereas McGhee's trial counsel testified he had received and reviewed Exhibits 2, 3, and 5, and likely had reviewed Exhibit 4 even though it did not contain any information about McGhee. Second, White relied on a coercion defense at trial, which this court described as "credible," *see White v. State*, 380 N.W.2d 1, 5 (Iowa Ct. App. 1985), whereas McGhee's defense theory was misidentification even though a handful of witnesses identified him as being one of the robbery perpetrators. Third, White was present for the lineup referenced in Exhibit 4 and was mentioned in the police notes, *see White*, 194 F.3d at 945 (noting Exhibit 4 was "the first time [eyewitness] Stouffer had identified [White]"), whereas McGhee was not present at the lineup nor was his photo displayed and the police report did not reference McGhee. In sum, the court's decision in *White* is neither persuasive nor binding on this court.

regardless of our view of the potential viability of the claim. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010).

To support his claim, McGhee points to the following list of questions included in the district court's PCR ruling, described by the court as "legitimate questions that could be asked of trial counsel concerning the reports":

1. If you had the reports, why did you not mention them directly in cross-examination? Why did you ask [Detective] Hoeper for his notes?;
2. If you had the reports, why did you not cross-examine officers or identification witnesses about these items:
    a. Exhibit 3 – police refer to [eyewitness] Abbott as the best of the witnesses yet he could not identify McGhee;
    b. Exhibit 3 – police note if [eyewitness] Stouffer is "coached properly" he could remember much more. To the Court it seems very important that the officers used the term "coached." This certainly raises the possibility that improper suggestiveness of eyewitnesses occurred;
    c. Exhibit 5 – police note [eyewitness] Stouffer went over the five mug shots including one of McGhee, and picked out [co-defendant] Sherman White as the man he gave the billfold to. There is no mention made of McGhee. Also, there is a clear indication Stouffer had now identified both [co-defendants] Cunningham and White as the person who took his wallet. Arguably, this shows both confusion and the possibility of suggestiveness by law enforcement.

McGhee claims to the extent we conclude trial counsel's "responses on the above matters are necessary to the question of whether a *Brady* violation was established," then his postconviction counsel was ineffective "in failing to enter those matters into the record."

We have addressed McGhee's claim on an alleged *Brady* violation under this record and found it to be without merit. Accordingly, we need not reach McGhee's ineffective-assistance-of-counsel claim on this issue. Although the

district court raises insightful questions, those questions are beyond the scope of our analysis of McGhee's *Brady* violation claim on appeal.[5] Trial counsel testified, under oath, that he received and reviewed Exhibits 2, 3, and 5; accordingly, McGhee has failed to show the prosecution suppressed that evidence. And McGhee has not shown Exhibit 4 was exculpatory and material to his defense.

We affirm the district court's ruling denying McGhee's application for postconviction relief.

**AFFIRMED.**

---

[5] McGhee did not claim his trial counsel was ineffective in failing to assert claims regarding the police lineup or suggestiveness of the photo identifications. And McGhee did not appeal the district court's denial of his PCR claim regarding trial counsel's performance during cross-examination of witnesses or pre-trial investigation—which, arguably, could entail discussion of the questions above.