STATE of Iowa, Plaintiff–Appellee,

v.

Willie James JEFFRIES, Jr.,
Defendant–Appellant.

No. 86–748.

Court of Appeals of Iowa.

Oct. 28, 1987.

**238**

Charles Harrington, Chief Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Richard J. Bennett, Asst. Atty. Gen., for plaintiff-appellee.

Considered by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

OXBERGER, Chief Judge.

Defendant, Willie James Jeffries, appeals his conviction of sexual abuse in the first degree in violation of Iowa Code sections 709.1 and 709.2 (1985). He asserts that the district court erred by: (1) refusing to admit evidence of the complainant's prior sexual behavior, and (2) refusing to admit evidence that the complainant suffered from delusions of sexual abuse. We affirm.

The charge arose from an incident which occurred on October 26, 1985, when defendant and another man picked up Freda Crawford after she had run away from a drug rehabilitation center. She had left the center with the intent of "getting high." Freda was not acquainted with either of the two men, but entered the car because she had been told that they had marijuana or alcohol. After stopping to purchase some wine, the two men and Freda drove to a wooded area. Defendant contends that Freda offered to engage in sex in order to pay the men back for the drugs and wine they had provided her. He testified that after having vaginal intercourse, Freda voluntarily performed oral sex on him. During this act, defendant asserts, she bit his penis resulting in his striking her twice in the face. In contrast to defendant's version of the incident, Freda claims that defendant requested oral sex and when she refused, he began hitting her and forcing her head toward his penis. To make him stop, she bit his penis. Freda also testified that defendant, without her consent, performed both anal and vaginal intercourse with her.

On cross-examination, Freda admitted to having a history of drug use, including LSD, marijuana, and alcohol. During defendant's recross-examination of Freda, she testified she had made statements to a Dr. Schoon at the drug treatment center regarding her frequent use and enjoyment of drugs. Counsel for defendant then asked her to tell the jury what she had told Dr. Schoon regarding "what extreme she would go to get drugs." Such proposed testimony was based on the following notes taken by Dr. Schoon:

> States that she has been voluntarily sexually active for the last year. She says that she does not like sex, that it hurts and is very uncomfortable. States she has sex because others want her to and to get drugs. She does state that she has, on a few occasions, had sex with strangers for money.

The State objected on the ground that such statements dealt with the complainant's past sexual behavior and therefore, pursuant to Iowa Rule of Evidence 412, were not admissible.

Defense counsel argued that he wanted to ask Freda if she had told the doctor that she, in the past, had sex in order to obtain drugs, so as to establish that she would go to almost any extreme to get drugs, including sex. Furthermore, counsel for defendant contended that where the State had been allowed to present favorable evidence of the victim's character, defendant should be allowed to impeach her credibility by asking questions dealing with her sexual activities as they related to drug use. The district court sustained the State's objection, ruling that the proposed testimony would violate Iowa Rule of Evidence 412.

Defendant also proposed to have a Dr. Edison give opinion testimony that the victim suffered from delusions of sexual

abuse caused by her drug usage, her prior sexual activity with other individuals, and prior sexual abuse by her brothers. The defendant again argued that, since the State had presented favorable evidence of the victim's character, this type of impeachment evidence was appropriate. The State objected to the proposed testimony as being violative of Iowa Rule of Evidence 412. Defendant argued that this evidence was appropriate impeachment and would corroborate his theory of the case. The district court again sustained the State's objection. Following his conviction, defendant appeals.

Generally, our review of criminal proceedings is at law for correction of errors only, and not de novo. Iowa R.App.P. 4. On issues concerning violation of constitutional safeguards, however, this court is obliged to make an independent evaluation of the totality of the relevant circumstances shown by the record under which the ruling on those constitutional rights was made. *Rinehart v. State*, 234 N.W.2d 649, 658 (Iowa 1975).

Defendant argues that the evidence was admissible under rule 412(b)(1) because it was "constitutionally required to be admitted" in order to protect his constitutional rights to confront and cross-examine witnesses and his right to a fair trial. Specifically, defendant asserts that the evidence was appropriate to impeach Freda's credibility and that it would corroborate his theory of the case, i.e., consent. The State contends that the evidence was not admissible under rule 412 (Iowa's "rape shield law").

■ In reviewing trial court's denial of admission of evidence, we ordinarily will not reverse unless the trial court abused its discretion. *State v. Clarke*, 343 N.W.2d 158, 162, 163 (Iowa 1984). This is a difficult standard to meet, and a defendant must show a clear abuse of discretion. *State v. Halstead*, 362 N.W.2d 504, 506 (Iowa 1985). We conclude the defendant has not made this showing.

■ Rule 412 is an exception to the general rule that relevant evidence is generally admissible. *Clarke*, 343 N.W.2d at 160–161. The purposes of the rule are to protect the privacy of victims and to encourage the reporting and prosecuting of sex offenses. *Id.* at 161; *State v. Ogilvie*, 310 N.W.2d 192, 195 (Iowa 1981). Subsection (b)(1) of Rule 412 is a narrow exception to the general policy expressed in Rule 412 that evidence of a victim's prior sexual behavior is inadmissible. *Clarke*, 343 N.W. 2d at 161. Subsection (b)(1) allows admission of evidence of past sexual behavior which is "constitutionally required to be admitted." To protect a defendant's constitutional rights, a defendant is allowed to rebut evidence of a victim's chastity introduced by the State. *State v. Zaehringer*, 280 N.W.2d 416, 419–20 (Iowa 1979); *see also State v. Padgett*, 300 N.W.2d 145, 147 (Iowa 1981); *State v. Munro*, 295 N.W.2d 437, 44–47 (Iowa 1980).

■ Clearly, the defendant, once the State introduced evidence of Freda's chastity, would have the right to rebut this evidence. The State, however, did not introduce any evidence of Freda's chastity or prior sexual history. The defendant, however, complains the State presented a distorted, one-sided picture of Freda's character. He particularly complains of the following exchanges:

Q. You live here in Des Moines with your family? A. Yes.

Q. Who do you live with? A. With my mom and my little sister.

Q. What is your mom's name? A. Song Crawford.

Q. Does your mom work? A. Yes.

* * *

Q. Where does your mom work? A. Job Service of Iowa.

Q. What does she do at Job Service? A. She is a micrographic operator.

Q. Do you have any brothers or sisters? A. Yes.

Q. Do any of them live with you? A. One sister and my brother, he is in college.

Q. How old is your sister? A. Fourteen.

Q. And how old is your brother? A. Twenty-one.

Q. Where does he go to college? A. Iowa.

Q. University of Iowa? A. Yes.

Q. Freda, do you go to school right now? A. No.

Q. Have you gone to school in the past? A. Yes.

Q. Have you ever graduated from high school? A. No.

Q. Do you think you will ever graduate from high school or are you working towards anything? A. Yes, I am. I am working towards my GED.

Q. Can you explain to the jury what a GED is? A. Yes, it is when you are going to—when you don't finish high school, you take tests to—it is a high school equivalency diploma—equals that.

Q. And you have already completed some work on that? A. Yes, I did.

Q. Freda, do you presently work? A. Yes, I do.

Q. Where do you work? A. At the convalescent home for children.

Q. Where is that at? A. It is in Johnston.

Q. How long have you worked there? A. Since January.

Q. 1986? A. Yes.

Q. What do you do at the convalescent center? A. I take care of the little kids there.

Q. And why would those kids be in the convalescent center? A. Because they can't do things for themselves.

Q. Can you tell us what types of things you help them with? A. I take care of them in the mornings. I get them ready for school and I give them—we feed them breakfast and we change their diapers and monitor their temperatures and take their blood pressure and make sure that they are okay. We do a lot of the oral things for them—oral hygiene. We do programs.

App. pp. 7–10. On redirect examination of Freda, the State continued its questioning regarding Freda's character:

Q. Could you tell the jury since your discharge what you have been doing with your life? A. Yes. I have been staying straight as possible as I can. I have been helping my mom out at home. I have—I work and I volunteer at the convalescent home and take care of the children and they make me real happy. Give me a lot to look forward with my mom. My mom doesn't go to the school a lot to help my little sister. Gives me a lot to tell my mom.

So I go down to the school and I talk to the teacher. I have chaperoned dances. I have chaperoned for her slumber party; stayed up all night with them, make sure they didn't get into any kind of trouble.

Defendant claims these exchanges portray Freda as a "family person" and create an inference of chastity; and, because such an inference is created, the State opened the door allowing rebuttal evidence of the victim's prior sexual history and possible sexual delusions. We disagree.

The evidence presented by the State relates to the victim's progress in reforming her prior drug-related life-style. The evidence in no way relates to her prior sexual history or any sexual delusions she may have. The State, by introduction of this testimony, only opened the door as to the victim's general character. A door which the defendant eagerly stepped through by introducing ample evidence of the victim's prior drug use and its effect on her. We also note that the strong public policy of protecting a victim's privacy behind Rule 412 favors exclusion of the proffered testimony. *See State v. Clarke*, 343 N.W.2d 158, 163 (Iowa 1984) (the probative value of the evidence did not outweigh the invasion of complainant's privacy which Rule 412 and other rape shield laws were designed to protect). We, therefore, hold the trial court's exclusion of the defendant's proffered testimony relating to the victim's prior sexual behavior was correct. The defendant's conviction is affirmed.

AFFIRMED.

SACKETT, J., concurs.

SCHLEGEL, J., dissents.

SNELL, J., takes no part.

SCHLEGEL, Judge (dissenting).

I respectfully dissent.

The majority concludes that the State did not present evidence opening the door for the defendant's rebuttal evidence of Freda's past sexual behavior. Rather, the majority notes, the State's evidence "relates to the victim's progress in reforming her prior drug-related life style" and therefore, "only opened the door as to the victim's general character." I believe that the record indicates that the State presented evidence raising the inference that Freda was of upstanding character. Thus, the door was open for the defendant to rebut such an inference. The defendant, in order to preserve his constitutional rights to confront and cross-examine witnesses and to a fair trial, must be allowed to effectively rebut the State's character evidence of Freda. The defendant must be allowed to present rebuttal evidence which provides the jury with a complete picture of the complainant's character so as to accurately judge her credibility. Therefore, I would hold that the evidence pertaining to Freda's past sexual behavior is admissible as rebuttal character evidence and thus, reverse and remand for a new trial.