**STATE of Iowa, Appellee,**

v.

**Denise Cleone RHODE, Appellant.**

**No. 90–842.**

Court of Appeals of Iowa.

May 4, 1993.

Jerald W. Kinnamon and Jon M. Kinnamon of Kinnamon, Kinnamon, Russo & Meyer, Cedar Rapids, for appellant.

Bonnie J. Campbell, Atty. Gen.; Roxann M. Ryan, Deputy Atty. Gen., Virginia Barchman, Asst. Atty. Gen., and Kevin Parker, County Atty., for appellee.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ., but decided en banc.

DONIELSON, Judge.

The defendant, Denise Rhode, appeals a judgment and sentence of the district court, following a bench trial, finding her guilty of first-degree murder and child endangerment.

Matthew Rhode, son of Joseph and Patricia Rhode, was born in September 1988. Several weeks after his birth, arrangements were made for Denise Rhode to baby-sit Matthew. Denise was the wife of John Rhode, brother of Joseph Rhode, and was therefore Matthew's aunt. At or about 8:00 a.m. on January 27, 1989, Joseph Rhode took Matthew to the John and Denise Rhode residence in Norwalk.

Between 2:30 and 3:00 p.m. that same day, Kristie Bauer, a registered nurse at Blank Clinic (a division of the Iowa Methodist Medical Center in Des Moines), received a call about a baby identified as Matthew Rhode. The caller did not identify herself, but Denise later acknowledged she had been the caller. The caller stated Matthew had fallen over in a walker when the wheel fell off. She stated Matthew had a "goose egg" on his head, his eyes were rolled back in his head, his arms and legs were stiff, and he was breathing funny. Ms. Bauer told the caller the baby needed to be seen immediately by a doctor.

Denise then called Joseph Rhode and told him Matthew had hurt his head. She told him to come to her home and see if Matthew should be taken to a doctor. After arriving at Denise and John's home, Joseph took Matthew to the Norwalk Clinic. Matthew was then transported by helicopter to Blank Clinic in Des Moines. Several medical procedures were performed, including two CT scans. However, Matthew died on January 31, 1989.

On May 15, 1989, a trial information was filed charging Denise Rhode with felony murder (first-degree murder) and child endangerment. Denise waived her right to a jury trial, and trial to the court commenced on February 12, 1990. Denise did not testify at trial, but portions of testimony given by her during a juvenile proceeding were admitted into evidence. At the juvenile hearing, Denise testified her mother and stepfather, Marilyn and Charles Marsh, had come to her home at about 11:00 a.m. on the morning of January 27, 1989. She took two of her children to get haircuts in town and left Matthew with the Marshes. Denise returned around 1:00 p.m. and the Marshes left between 1:00 p.m. and 1:30 p.m. Prior to the Marshes' departure, Matthew fell off the bed but sustained no

apparent injuries. She then fed Matthew and put him in a walker in the kitchen. She went to the bedroom to fold clothes and a short time later she heard Matthew crying. When she returned to the kitchen, she found the walker tilted and Matthew's head against a wall. She then called Blank Clinic and Matthew's parents.

The State presented the testimony of several doctors who treated Matthew and of Dr. Thomas Bennett, the forensic pathologist who performed the autopsy on Matthew. These doctors were unanimous in their opinion that neither the alleged incident with the walker nor a fall from a standard-height bed could cause the injuries sustained by Matthew. The injuries required, in their opinions, a blow of much greater force. For example, Matthew's head could have struck a flat, hard surface or could have been struck with a blunt object.

Denise's mother and stepfather, Marilyn and Charles Marsh, were served with subpoenas to appear as witnesses for the State. In chambers, the Marshes asserted their Fifth Amendment right against self-incrimination. As a result, they were not called to testify at trial.

At the close of the State's evidence Denise's trial counsel, Larry Scalise and Karla Fultz, requested they be permitted to withdraw for ethical reasons and also due to the fact that codefense counsel was to be called as a witness. At this time, attorney Scalise also raised his concern that Denise might not be competent to assist in her defense. The court granted the request of Scalise and Fultz, and new counsel, Lylea Critelli and Jacques Schira, were appointed. At a March 20, 1989, hearing, the new counsel testified they had observed nothing to lead them to conclude Denise was not competent to assist in her defense. The defense then rested without presenting any evidence.

On April 13, 1990, the trial court entered its findings and conclusions, finding Denise guilty of felony murder and child endangerment. On May 24, 1990, the trial court sentenced Denise to life imprisonment on the felony murder charge and to ten years

on the charge of child endangerment. The sentences were ordered to be served concurrently.

Denise filed her notice of appeal. Among other issues, Denise contended the district court erred in not holding a competency hearing. The case was then submitted to the court of appeals. On December 13, 1991, Chief Judge Oxberger issued an order which remanded the issue of competency to the district court. The court of appeals had found reasonable grounds existed at the time Denise's original trial counsel withdrew to examine whether Denise was competent to stand trial. The court of appeals therefore remanded the case to the district court to make a determination as to whether Denise was competent at the time she stood trial. This court retained jurisdiction of the appeal.

Prior to the remanded competency hearing, new appellate counsel for Denise then filed several prehearing motions, including a motion for a new trial. Denise specifically asserted her due process rights would be violated by an attempt to hold a hearing ex post facto on the issue of her competency to stand trial. In a ruling entered February 26, 1992, the district court declined to rule on Denise's motion, noting jurisdiction had been retained by the court of appeals. Denise then filed an application for review of the district court's order with the court of appeals. The court of appeals denied the application without prejudice.

A competency hearing was held on October 20, 21, 22, and 23, 1992. At the hearing, Denise presented the testimony of attorneys Scalise and Fultz, who had withdrawn midway through her trial. The State presented the testimony of the new trial counsel who had been appointed to represent Denise following the withdrawal of her original counsel. Both Denise and the State called several expert witnesses to testify on the issue of Denise's competency at both the time of trial and at present.

On October 28, 1992, the district court entered its findings and conclusions. The court found the evidence presented by Denise and the State to be in "equipoise." Relying on the presumption that a defen-

dant is competent, the court determined Denise was competent to stand trial both at the time of trial and at present.

Denise now appeals the findings and conclusions of the district court regarding her competency. In addition, jurisdiction over the other issues Denise had raised in her original appeal remains with the court of appeals.

Denise first challenges the district court's finding she was competent to stand trial. She specifically argues an ex post facto determination of her competency did not meet the requirements of due process. Denise also contends the district court abused its discretion in granting her original trial counsel's motion to withdraw from her case. She argues the district court judge erred by· failing to recuse himself following the withdrawal of the original trial counsel. Denise argues the district court erred in making a finding that the taking of the Fifth Amendment ·by the Marshes was a "ruse." Denise contends the convictions for felony murder and child endangerment were not supported by substantial evidence. She contends the convictions and corresponding punishments for the offenses of felony murder and child endangerment were unconstitutional as they violated the double jeopardy clause and the Eighth Amendment. Finally, Denise contends she received ineffective assistance of counsel in numerous respects.

## I. *Competency Hearing.*

Denise raises several arguments related to the district court's competency hearing. Initially, we note, in her appeal prior to the remand order of the court of appeals, Denise argued the district court erred in not holding a competency hearing. Because this court subsequently ordered the district court to hold a competency hearing, it is not necessary to address this issue.

Regarding the competency hearing, Denise contends she was denied due process by the fact the competency hearing was held almost two years after reasonable grounds had appeared in the record for holding such a hearing. Accordingly, she contends the district court was denied of any jurisdiction

to proceed with her case. In the alternative, Denise argues because the hearing was held ex post facto, the State should not have been entitled to the presumption of competency. ·Finally, she contends a preponderance of the evidence supported the finding that she· was incompetent to stand trial.

To the extent Denise has raised a constitutional issue, review is de novo. We make an independent evaluation of the totality of the relevant circumstances to determine if such an error was made. *Rinehart v. State*, 234 N.W.2d 649, 658 (Iowa 1975); *State v. Jeffries*, 417 N.W.2d 237, 239 (Iowa App.1987). However, to the extent Denise has raised a statutory claim, our review is for errors at law. Iowa R.App.P. 4. ·

### A. Whether Denise Was Denied Due Process by an Ex Post Facto Competency Hearing.

We first determine whether Denise was denied due process because the determination of her competency was not made until some twenty months after reasonable grounds had appeared in the reçord for holding a competency hearing.

The conviction of an accused per- son while he or she is legally incompetent violates due process. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815, 818 (1966) (citing *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956)). Where the evidence raises a "bona fide" doubt as to the defendant's competency, the judge must conduct a competency hearing. *Id.* at 385, 86 S.Ct. at 842, 15 L.Ed.2d at 822.

Iowa Code section 812.3 (1989) provides:

If at any stage of a criminal proceeding it reasonably appears that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, further proceedings must be suspended and a hearing had upon that question.

As acknowledged by the limited remand previously ordered by this court, we concede the evidence produced at trial raised a "bona fide" doubt as to Denise's competency to assist in her defense. Because that doubt was raised, the matter was remanded for the purposes of determining Denise's competency at the time of trial.

■ However, in *Pate v. Robinson*, the Supreme Court recognized the difficulties inherent in retrospectively, or ex post facto, determining an accused's competence to stand trial. 383 U.S. at 386, 86 S.Ct. at 843, 15 L.Ed.2d at 823. If the question of competency was determined retrospectively before a jury, the jury would be unable "to observe the subject of their inquiry and expert witnesses would have to testify solely from information contained the the the printed record." *Id.* In *Pate*, the competency hearing would have been held some six years after the defendant's conviction. *Id.*

The Iowa Supreme Court has also recognized the potential problems in holding a competency hearing ex post facto. *State v. Myers*, 460 N.W.2d 458, 460 (Iowa 1990). In *Myers*, this court had previously concluded the information which came to the district court's attention during the trial raised serious questions regarding the defendant's competency. *Id.* at 459. Based on that finding, the court of appeals concluded the district court erred in not ordering a competency hearing sua sponte and reversed the defendant's conviction. *Id.* Although the supreme court vacated this court's finding that the circumstances raised enough doubt to warrant a competency hearing, the supreme court in dicta stated:

> If the court of appeals was correct in concluding that matters known to the trial court mandated a hearing under section 812.3, then we believe *the failure to hold such a hearing was probably not capable of being cured by an ex post facto determination of competency* sometime after the trial was held.

*Id.* at 460 (emphasis added).

Existing Iowa law provides little guidance regarding under what circumstances the failure to hold a competency hearing in accordance with section 812.3 could be cured by an ex post facto determination. However, the Eighth Circuit Court of Appeals in *Harkins v. Wyrick*, 552 F.2d 1308, 1311 (8th Cir.1977), addressed this issue in the context of a postconviction evaluation of competency. In *Harkins*, the court found a "nunc pro tunc," or ex post facto, competency hearing was the proper remedy for the wrongful denial of a pretrial competency hearing if "a meaningful hearing" on the question of competency was still possible. *Id.*

Other state courts have recognized the approach taken by the Eighth Circuit. For example, the Oklahoma Court of Criminal Appeals found the error in failing to hold a concurrent competency hearing was cured by the availability of certain witnesses and records at the ex post facto hearing. *Clayton v. State*, 840 P.2d 18, 25 (Okla.Crim.App.1992). The evidence included "various records as to examinations by medical personnel, psychologists, jail personnel, and witnesses of the appellant at the time he stood trial; the judge who presided over the appellant's trial; [and] trial counsel." *Id.* The Supreme Court, Appellate Division, of New York found the determination of whether "reconstruction" was possible was contingent on three specific considerations:

> (1) the extent to which there were contemporaneous psychiatric examinations, ... (2) the length of time since trial so as to determine whether witnesses at the reconstruction hearing can testify from memory rather than from records made at the time; and (3) the opportunity to observe defendant's behavior at trial to gauge the extent to which he was able to cooperate with counsel and to understand the nature of the proceedings.

*People v. Arnold*, 113 A.D.2d 101, 107, 495 N.Y.S.2d 537, 542 (1985) (quoting *People v. Lowe*, 109 A.D.2d 300, 305, 491 N.Y.S.2d 529, 534 (1985)). Among its findings, the court in *People v. Arnold* found the length of time since trial, which was three years, was not unduly long. *Id.*

Based upon the above case law, we hold an ex post facto hearing is constitutionally

permissible if a meaningful inquiry into the defendant's competency can still be made. The failure to conduct a competency hearing concurrently with trial is not *per se* violative of due process.

■ The hearing in this matter was conducted some twenty months after the case had been tried to the district court. At the competency hearing, Denise presented the testimony of her original trial counsel, Larry Scalise and Karla Fultz. They both testified that, based on their direct contact with Denise at the time of trial, they believed she was incompetent to assist in her defense. Denise also introduced the testimony of Dr. Gaylord Nordine, a psychiatrist, and of Jeannette Wright, a psychotherapist who practiced with Dr. Nordine. Wright and Dr. Nordine had seen Denise during the pendency of the proceedings which led up to the February 12, 1990, bench trial. The State presented the testimony of the trial counsel who had been appointed to represent Denise following the withdrawal of Scalise and Fultz. Dr. Michael Taylor, a psychiatrist, also testified on behalf of the State. His determination that Denise was competent was based on his review of transcripts, written reports from Dr. Nordine, prison disciplinary reports, and his personal interviews with Denise. The State also introduced the testimony of several psychologists who had contact with Denise following her incarceration.

The above testimony was presented over a four-day period and was presented to the same judge who had presided over Denise's criminal trial. Based on the extensive evidence which was presented at this hearing, we are convinced a meaningful inquiry on the question of competency was still possible. We find Denise's due process rights were not violated by the fact the competency hearing was held ex post facto.

■ On a related issue, Denise contends the absence of concurrent competency determination by the district court deprived the district court of jurisdiction to proceed in the case. As Denise was not denied due process from having her competency determined ex post facto, we find the district court was not deprived of jurisdiction in this case.

## B. Presumption of Competency.

Denise next contends, because the competency hearing was held ex post facto, the State is not entitled to the presumption of competency.

■ Our supreme court has recognized "[a] defendant is initially presumed to be competent, and the burden to establish the contrary should be on him; if the evidence is in equipoise the presumption should prevail." *State v. Pedersen*, 309 N.W.2d 490, 496 (Iowa 1981). Denise relies upon a 1977 case from the Third Circuit Court of Appeals, *United States v. Hollis*, 569 F.2d 199, 205 (3rd Cir.1977), to support her argument. We find *Hollis* is not controlling. *Hollis* arose in a federal court in which the burden of proving competency rested with the prosecution.

Again, we do not find the fact the hearing was held ex post facto infringed upon Denise's constitutional right to due process. We find no reason in statutory or case law to ignore controlling precedent. Even when the determination of competency is made ex post facto, the defendant is still presumed to be competent. We affirm on this issue.

## C. Determination of Competency.

Finally, Denise contends the evidence introduced at the competency hearing established, by a preponderance of the evidence, she was incompetent at the time she stood trial on the criminal charges, at the time Scalise and Fultz withdrew, and at the time of the remand proceeding.

Having already addressed the constitutional issues raised by Denise, we will not review the evidence de novo on this particular issue. *See State v. Jackson*, 305 N.W.2d 420, 425 (Iowa 1981). The question of competency is for the trier of fact. Therefore, "[o]ur inquiry is limited to whether there is support in the record for the competency finding." *Id.*

In determining competency, "[t]he critical question is 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *State v. Lucas*, 323 N.W.2d 228, 232–33 (Iowa 1982) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824, 825 (1960)). Under this standard,

> [t]here are two distinct matters to be determined: (1) whether the defendant is sufficiently coherent to provide his counsel with information necessary or relevant to constructing a defense; and (2) whether he is able to comprehend the significance of the trial and his relation to it.

Wayne R. Lafave & Austin W. Scott, *Criminal Law* § 4.4 (1986). A defendant is initially presumed to be competent. *State v. Pedersen*, 309 N.W.2d 490, 496 (Iowa 1981). The burden of proving incompetency to stand trial, by a preponderance of the evidence, is on the defendant. *Id.*

The evidence presented at the hearing by Denise was clearly in direct contradiction to the evidence presented by the State. Denise presented the testimony of her original trial counsel, Larry Scalise and Karla Fultz. Both attorneys testified that, at the time of trial, Denise was incapable of assisting them in important matters related to trial including her possible testimony and the possibilities and implications of a plea. Denise presented the testimony of several mental health experts, including a psychologist and psychiatrist. These experts testified Denise was experiencing a "dissociative disorder" at the time of trial. In their opinions, this disorder generally prevented her from integrating functions such as memory, forethoughts, and forefeeling. As a result, Denise would have been unable to understand the charges against her, provide counsel with relevant information, or recall certain emotional experiences.

On the other hand, the State presented the testimony of Lylea Critelli, one of the new trial counsel who were appointed following the withdrawal of Scalise and Fultz. Critelli testified Denise was able to assist in her defense and she appeared to understand what was happening at the time of trial. The State presented the testimony of two prison psychologists who had the opportunity to meet with Denise following her incarceration. Both testified Denise showed no signs of a dissociative disorder. Dr. Michael Taylor, a psychiatrist, also testified on behalf of the State. He disagreed with the findings of Denise's expert witnesses. Based on his review of transcripts, written reports from Dr. Nordine, prison disciplinary reports, and his interviews with Denise, he found Denise's behavior and mental status examination to be "absolutely normal." He concluded that, although Denise had experienced a tremendous amount of stress, she was competent to understand the charges against her and assist in her defense.

On our review of this evidence, we agree with the findings of the district court: "Both opinions cannot be correct; one must be wrong. The defendant cannot be both competent and incompetent at the same time." As a result, the evidence at this hearing was essentially in "equipoise." *See Pedersen*, 309 N.W.2d at 496. We find Denise did not establish, by a preponderance of the evidence, she was incompetent either at the time of trial or at the time of this competency hearing.

## II. Whether the District Court Abused its Discretion in Granting Trial Counsel's Motion to Withdraw.

Denise next contends the district court erred in granting the motion to withdraw filed by Denise's original trial counsel, Scalise and Fultz.

On the issue of whether trial counsel should have been permitted to withdraw, we review for an abuse of discretion. *State v. Taylor*, 211 N.W.2d 264, 267 (Iowa 1973). In matters pending before a tribunal, the Iowa Code of Professional Responsibility provides a lawyer may not request permission to withdraw "unless such request or such withdrawal is because ...

[h]is continued employment is likely to result in a violation of a disciplinary rule." Iowa Code of Professional Responsibility DR 2–110(C)(2) (1992).

Following the conclusion of the State's evidence, Denise's original trial counsel orally submitted an application to withdraw. In an in-camera hearing, attorney Larry Scalise offered the following explanation:

Q: (The Court) Let me ask you this Mr. Scalise: Are there any matters relative to your application to withdraw that you wish to make at this time in the presence of the prosecution? A: (Scalise) I think there are some matters, Your Honor, that we can put on the record in front of Ms. Barchman and the prosecution. They are this:

Ms. Fultz and I have concluded after meeting for some hours on Saturday that, first Ms. Fultz must necessarily be a witness in this cause and ethically cannot be a lawyer and a witness; and the rule is pretty straightforward about that. I've been through it last August in Federal Court, and the rule is the same there as it is here. If, in fact, you discover that indeed you are a witness, you've got to get out; and you cannot represent any person without violating the Canons of Ethics. And so for that reason, I think that's enough to take us out of the case.

\* \* \* \* \* \*

A: (Scalise) In addition, Your Honor, it's come to our attention that there are what I call irreconcilable differences between Mrs. Rhode and ourselves such that we cannot render the effective assistance counsel that she needs.

On our review, it is clear Scalise and Fultz believed their continued representation of Denise would threaten their ability to comply with the Iowa Code of Professional Responsibility.

In the order sustaining the motion to withdraw, the court ordered Scalise and Fultz to fully participate and assist new counsel in their representation of Denise. We note the judge was careful to not inquire into the specific facts behind Scalise's and Fultz's request to withdraw. This was

a bench trial and for the judge to have inquired into the specific facts surely would have gravely prejudiced Denise's case. We find the district court did not abuse its discretion in permitting Scalise and Fultz to withdraw.

### III. *Whether the Trial Judge Committed Reversible Error by Failing to Recuse Himself.*

Denise next contends that the trial judge committed reversible error by failing to recuse himself after he permitted Denise's original trial counsel to withdraw.

 In establishing the trial judge should have recused himself, the burden is on the party seeking recusal to establish the basis for it. *Forsmark v. State*, 349 N.W.2d 763, 767 (Iowa 1984). The determination of whether the judge should disqualify himself is committed to the judge's discretion. *Id.*

In order to constitute the prejudice necessitating a different judge, "[t]he alleged bias and prejudice ... must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case."

*State v. Farni*, 325 N.W.2d 107, 110 (Iowa 1982) (citations omitted). Canon 3(D)(1)(a) of the Iowa Code of Judicial Conduct (1992) specifically provides a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including instances where: "the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

 Denise contends the trial judge entered into an impermissible discussion when he inquired into the possibility of Denise entering a plea. We do not find this inquiry on the part of the trial judge demonstrates a personal bias or prejudice which would have required the judge to recuse himself. Furthermore, we note the judge was especially careful to *avoid* developing any personal bias insofar as he did not inquire into the specific facts behind

the withdrawal of attorneys Scalise and Fultz.

Denise has failed to demonstrate any prejudice or personal bias stemming from an extrajudicial source. The trial judge did not abuse his discretion in declining to recuse himself.

## IV. District Court's Finding Regarding the Fact the Marshes Asserted the Fifth Amendment.

Denise argues the district court committed reversible error in making reference to the fact her mother and stepfather, Marilyn and Charles Marsh, chose to take the Fifth Amendment rather than to testify at Denise's trial. Specifically, Denise contends the district court erred by making its finding that the taking of the Fifth Amendment by the Marshes was a "ruse" of the defendant.

To the extent Denise is claiming a constitutional violation, we review de novo. *Rinehart v. State,* 234 N.W.2d 649, 658 (Iowa 1975); *State v. Jeffries,* 417 N.W.2d 237, 239 (Iowa App.1987). However, to the extent an evidentiary issue is raised regarding the inferences which may be made from the fact the Marshes invoked the Fifth Amendment, we review for an abuse of discretion. *State v. Halstead,* 362 N.W.2d 504, 506 (Iowa 1985).

We concede the Fifth Amendment protects witnesses in a state criminal proceeding as well as a defendant. *Malloy v. Hogan,* 378 U.S. 1, 11–14, 84 S.Ct. 1489, 1495–97, 12 L.Ed.2d 653, 658–63 (1964). The power to decide if the witness may assert his privilege against self-incrimination is vested in the discretion of the district court. *State v. Parham,* 220 N.W.2d 623, 626 (Iowa 1974).

Here, Denise has not claimed a violation of her own right against self-incrimination. In addition, the Marshes have not claimed their right against self-incrimination was violated by the district court's finding. Normally, the issue of the Fifth Amendment is raised because the State has improperly commented on the fact the defendant invoked the Fifth Amendment. Once the fact a person has invoked the Fifth

Amendment is introduced, "prejudice arises from the human tendency to treat the claim of privilege as a confession of crime, creating an adverse inference which an accused is powerless to combat by cross-examination." *State v. Allen,* 224 N.W.2d 237, 241 (Iowa 1974).

In this case, Denise contends the district court erred by commenting on the fact a witness had invoked the Fifth Amendment. However, she does not complain the district court's comment prejudiced the Marshes or made any implication that the Marshes claim of privilege was in essence a "confession" to the crime. *See id.* Indeed, an inference which suggested a third party had essentially "confessed" to the crime surely would have helped Denise's defense as it would have generated doubt as to the question of identity. Here, Denise argues the district court committed error by drawing an adverse inference against *her* from the fact the Marshes invoked the Fifth Amendment.

At trial, Denise's counsel conceded the fact the Marshes invoked the Fifth Amendment potentially could prejudice the Marshes and create reasonable doubt as to the issue of identity. To the extent this issue was raised, there was no argument from either the State or Denise's counsel at trial. We note the following discussion between the State, Denise's counsel, and the district court at an April 2, 1990, hearing:

Q: (The Court) Well, what I'm worried about is what I can and should do. I have no—I know what I know; and I know the Marshes did—number one, that according to Denise's testimony, they were present from 10:30 to 1:30 or 10:00 till 1:00, or whatever the record shows; that they took the Fifth Amendment and did not testify. *And I think I have to consider that fact.* I can't ignore it. I'm not in the position of a jury that doesn't know why they didn't show up. *I think I have to consider that fact with all the other evidence in determining whether or not that creates a reasonable doubt as to Denise's guilt.* I think that's exactly the box I'm in. Anybody argue with that? A: (Defense counsel)

No argument from the defense, Your Honor. A: (State) None.

(Emphasis added.)

■ In its findings of fact, the district court specifically found the presence of the Marshes to testify did not raise reasonable doubt as to the guilt of Denise. We conclude such a finding does not violate the Marshes' right against self-incrimination. Therefore, we review only for an abuse of discretion. *See Halstead*, 362 N.W.2d at 506.

■ We find the district court did not draw an impermissible inference from the fact the Marshes' invoked the Fifth Amendment as to Denise's guilt. The court's observation that "the refusal of the Marshes to testify is a ruse; a ploy to generate doubt by their silence" was not an abuse of discretion. Rather, the district court was explicitly choosing to not accept the potential positive inferences that Denise had previously suggested be made by the fact the Marshes invoked the Fifth Amendment.

## V. *Sufficiency of the Evidence.*

Denise next contends the convictions for both felony murder and child endangerment were not supported by substantial evidence.

Our standard of review is well settled. A verdict will. be upheld where there is substantial evidence to support the charge. *State v. LeGear*, 346 N.W.2d 21, 23 (Iowa 1984). Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* The evidence is viewed in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the record. *State v. Bass*, 349 N.W.2d 498, 500 (Iowa 1984). We consider all the evidence at trial, not just the evidence that supports the verdict. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980).

### A. Conviction for Child Endangerment.

Denise first contends there was insufficient evidence to establish Denise was the party who committed the act which caused Matthew's injury and that there was insufficient evidence to establish the act causing Matthew's injury was intentional as required by Iowa Code section 726.6(1)(b) (1989).

A person having custody or control over a child commits child endangerment when the person "[b]y an intentional act or series of intentional acts, uses unreasonable force that results in physical injury." Iowa Code § 726.6(1)(b) (1989). When the act results in serious injury to the child, the person is guilty of a class "C" felony. Iowa Code § 726.6(2) (1989).

■ We first find sufficient evidence to establish that Denise committed the act which caused Matthew's injury and ultimately his death. The majority of the evidence suggests the injury was not sustained until after 1:30 p.m., after the Marshes had left. Given the severity of the injuries sustained, it is highly improbable Matthew would have had the capacity to eat at 1:30 p.m. as Denise reported he did. Also, medical evidence presented at trial suggests the swelling which occurred after Matthew was injured would have appeared almost instantaneously after the injury. This evidence establishes the injury occurred while Denise was at her home and after the Marshes had left for the afternoon.

We also find substantial evidence to establish the injuries inflicted upon Matthew were intentional. As the evidence at trial overwhelmingly suggested, the severe injuries which Matthew suffered were inconsistent with an accidental injury. The State presented the testimony of several doctors who were unanimous in their opinion that neither the alleged incident with the walker nor a fall from a standard-height bed could cause the injuries sustained by Matthew. The injuries would have required a blow of much greater force.

Here, the evidence produced at trial, taken in the light most favorable to the State, may reasonably lead to the inference that Denise committed child endangerment. We find there was substantial evidence to

support the conviction for child endangerment.

## B. Conviction for Felony Murder.

Denise also contends there was insufficient evidence of "malice aforethought" to support Denise's conviction for felony murder.

 Under Iowa Code section 707.1 (1989), "[a] person who kills another person with malice aforethought either express or implied commits murder." "Malice aforethought" has been defined as "a fixed purpose or design to do some physical harm to another which exists before the act is committed." Iowa Criminal Jury Instruction No. 700.7 (1990).

Malice may be inferred from the circumstantial evidence in this case. Denise intentionally slammed Matthew's head against a hard, flat surface causing a severe head injury. In addition, malice may be inferred from the defendant's prior dealings with the victim. *See State v. Johnson*, 318 N.W.2d 417, 438 (Iowa 1982), *cert. denied*, 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982). At trial, Denise's husband, John Rhode, testified that, prior to January 27, 1989, he had seen Denise shake Matthew, flip him over her arm, and spank him. When John confronted Denise, she allegedly replied "she didn't care because it wasn't her child." Matthew's mother testified that, prior to January 27, 1989, she discovered Matthew had been bruised after staying at Denise's home. When asked about the bruises, Denise explained Matthew's injuries by blaming her children or Matthew himself.

 Finally, we also note malice may be implied from the commission of a felony which results in death. *See Schrier v. State*, 347 N.W.2d 657, 666 (Iowa 1984); *State v. Taylor*, 287 N.W.2d 576, 578 (Iowa 1980). We have found substantial evidence that Denise committed child endangerment. Child endangerment which results in serious injury is a class "C" felony. Iowa Code § 726.6(2) (1989).

We find Denise's prior mistreatment of Matthew, together with the intentional nature of the fatal injuries inflicted upon him, are substantial evidence that Denise acted with malice aforethought.

## VI. *Constitutionality of Denise's Convictions of Child Endangerment and Felony Murder.*

Denise raises several arguments with regard to the constitutionality of her convictions for child endangerment and felony murder. She contends child endangerment and felony murder are mutually exclusive offenses and she cannot be convicted of both. She argues the conviction for these offenses together violates the double jeopardy clause and creates "multiple punishments." Denise also argues her conviction constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

When a defendant is alleging error involving a constitutional right, such as here, we make an independent evaluation of the totality of the relevant circumstances to determine if such an error was made. *Rinehart v. State*, 234 N.W.2d 649, 658 (Iowa 1975); *State v. Jeffries*, 417 N.W.2d 237, 239 (Iowa App.1987).

### A. Whether the Offenses of Child Endangerment and Felony Murder are Mutually Exclusive.

Denise first contends it was impossible for her to have committed both child endangerment and felony murder because of the relevant statutory language for each offense.

 Murder is in the first degree and is also felony murder when committed "while participating in a forcible felony." Iowa Code § 707.2(2) (1989). Our legislature has determined certain felonies involving a substantial risk of serious injury or death, including felonious child endangerment, should provide a basis for the felony murder rule. Iowa Code § 702.11 (1989). *See State v. Ragland*, 420 N.W.2d 791, 794 (Iowa 1988). Child endangerment becomes felonious when a person commits child endangerment which results in serious injury to a child. Iowa Code § 726.6(2) (1989).

Denise contends the two offenses are mutually exclusive because the resulting injury in this case was not "serious injury," but death. That is, because death resulted Denise could not have committed child endangerment. We are not persuaded by this argument. An injury which is life-threatening, such as an injury which does in fact cause death, is by definition a "serious injury." Iowa Code § 702.18 (1989). We construe death to be the most serious of injuries and in no way to be exclusive of serious injury. The offenses of child endangerment and felony murder are not mutually exclusive.

### B. Whether the Merger Doctrine Applies.

Denise next contends the child endangerment charge should have merged with murder in the second degree and thus prohibited a separate conviction for felonious child endangerment. Denise essentially is arguing this court should follow the "merger doctrine." Following the merger doctrine, the child endangerment charge would have merged in the elements of second-degree murder and therefore could not have been used to elevate the charge to first-degree murder. *See State v. Mayberry*, 411 N.W.2d 677, 682 (Iowa 1987).

We remind Denise our supreme court has consistently *rejected* the merger doctrine for felony murder. *State v. Ragland*, 420 N.W.2d 791, 793 (Iowa 1988); *State v. Beeman*, 315 N.W.2d 770, 777 (Iowa 1982). Following statutory construction, the supreme court in *Beeman* held the legislature intended that felonious assaults may serve as the basis of a felony murder conviction. 315 N.W.2d at 777. We find no reason to depart from existing law and precedent. The merger doctrine is inapplicable to Denise's convictions.

### C. Whether the Convictions for Both Offenses Violated the Double Jeopardy Clause.

Denise next contends her conviction and punishment for both child endangerment and felony murder violated the double jeopardy clause.

We first consider whether the convictions for both offenses violated the double jeopardy clause. The double jeopardy clause of the Fifth Amendment bars "any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady v. Corbin*, 495 U.S. 508, 521, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548, 564 (1990). In this case, only one prosecution was ever brought against Denise. There have been no subsequent prosecutions. The convictions for both offenses do not violate the double jeopardy clause.

Denise also contends her punishment for the felony murder and for the underlying felony constitutes a double jeopardy violation. Specifically, she argues it is improper to impose a sentence for both offenses.

The determination of whether there is double punishment begins with a determination of whether the legislature intended punishment for both crimes.

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932). In other words, "[l]egislatures, not courts, prescribe the scope of punishments." *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 544 (1983).

Relying on the statutory language the legislature has created, our supreme court has rejected the merger doctrine. *See State v. Beeman*, 315 N.W.2d 770, 777 (Iowa 1982). Arguments supporting the merger doctrine simply are not consistent with our legislative scheme. *State v. Ragland*, 420 N.W.2d 791, 793 (Iowa 1988). In sum, the determination of double punishment turns on the State legislature's intent

to impose punishment under two different provisions. The Iowa legislature's intent is clear: felony murder and the underlying felony can both be punished.

■ Denise also raises a double jeopardy argument based on her belief that the child endangerment charge was a lesser-included offense of the felony murder charge. An offense is lesser-included if it is impossible to commit the greater offense without also committing the lesser offense. *State v. McNitt*, 451 N.W.2d 824 (Iowa 1990). *See State v. Jeffries*, 430 N.W.2d 728 (Iowa 1988).

■ The felony underlying a felony murder charge is not a lesser-included offense of felony murder. *State v. Walters*, 426 N.W.2d 136, 141 (Iowa 1988).

> The rationale for such a rule is that it is not essential to prove commission of the underlying felony in order to convict a defendant of felony murder. All that is required is proof that the defendant was participating in the underlying felony.

*Id.* Felony murder occurs when a "person kills another while *participating* in a forcible felony." Iowa Code § 707.2 (1989) (emphasis added). Because it was not necessary to prove the commission of felonious child endangerment to convict Denise of felony murder, the former was not a lesser-included offense of the latter. *Walters*, 426 N.W.2d at 141.

On our review of the above arguments presented by Denise, we find no violation of the double jeopardy clause.

### D. Whether Denise's Conviction Constitutes "Cruel and Unusual Punishment."

Denise argues the enhancement of murder to first-degree murder by the use of the felony murder rule constitutes "cruel and unusual punishment" in violation of the Eighth and Fourteenth Amendments.

■ The supreme court in *State v. Ragland*, 420 N.W.2d 791, 795 (Iowa 1988) found "[l]ife imprisonment for first-degree murder is not so disproportionate to the seriousness of the offense as to shock the conscience of sense of justice." Viewing the evidence in the light most favorable to the State, we find Denise committed an intentional act which inflicted serious injury to and ultimately caused the death of a four-month-old baby boy. Under such circumstances, we find a life sentence is not cruel and unusual punishment.

### VII. *Ineffective Assistance of Counsel.*

Finally, Denise contends she received ineffective assistance of counsel in a multitude of ways, including her original trial counsel's failure to state the reasons for their withdrawal, the failure of counsel to create an evidentiary record on the issue of competency, and the failure of counsel to create a record regarding whether a plea bargain was offered.

■ We concede the circumstances of this case placed counsel in some particularly unique situations and perhaps their actions should be reviewed. However, where the record on direct appeal is not adequate to permit us to resolve the issue, we must preserve the defendant's claim for postconviction proceedings so the facts may be so developed. *State v. Koenighain*, 356 N.W.2d 237, 238 (Iowa App.1984). This also gives the allegedly ineffective attorney the opportunity to explain his or her conduct. *State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978).

We conclude there is an inadequate record for us to adjudicate the defense claim without counsel's explanation for his or her conduct. Many of counsel's actions may be in keeping with the defense strategy which only defense counsel can explain. We therefore preserve defendant's ineffective assistance of counsel claim for a later proceeding.

The costs of this appeal are taxed to Denise.

For the reasons stated, we affirm the judgment of the district court.

**AFFIRMED.**

All judges concur, except SACKETT and SCHLEGEL, JJ., who dissent.

SACKETT, Judge, dissenting.

I dissent.

I would reverse and remand for a new trial.

The failure of the trial court to hold a competency hearing when it became very obvious through the testimony of attorney Larry Scalise that defendant was not competent was not corrected by hearing on remand.

Iowa Code section 812.3 provides:

> If at any stage of a criminal proceeding it reasonably appears that the defendant is suffering from a mental disorder which prevents him or her from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, *further proceedings must be suspended and a hearing had upon that question.* (Emphasis supplied).

In *Myers,* 460 N.W.2d at 460, the supreme court said:

> If the court of appeals was correct in concluding that matters known to the trial court mandated a hearing under section 812.3, *then we believe the failure to hold such a hearing was probably not capable of being cured by an ex post facto determination of competency sometime after the trial was held.* (Emphasis supplied).

The dictates of Iowa Code section 812.3 and *State v. Myers,* 460 N.W.2d 458 (Iowa 1990) are very clear. The trial must be stopped when the issue of competency arises and the failure to do so cannot be corrected by a later hearing.

The evidence relied on by the trial court to find the defendant competent was of persons not with her during trial. Scalise and Fultz who tried the case found her not competent. Her second batch of trial attorneys did little more than rest her case. Furthermore, her first batch of attorneys interpreted trial court orders as precluding them from communicating with her second batch of attorneys.

I also disagree with the majority on the issue of Marilyn and Charles Marsh asserting the Fifth Amendment. I would grant defendant a new trial on that issue, too.

Furthermore, I think Denise's conviction of felony murder precludes her also being convicted of child endangerment.

I further disagree with the majority conclusion that defendant was presumed competent. The State agreed with defendant prior to hearing the burden was equal.

SCHLEGEL, J., joins this dissent.