**IN THE COURT OF APPEALS OF IOWA**

No. 14-0250
Filed June 24, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**COLBY RAY PUCKETT,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Mills County, James S. Heckerman (plea) and Gregory W. Steensland (sentencing), Judges.

Colby Puckett challenges his plea of guilty to second-degree murder. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant Appellate Defender, for appellant.

Colby Puckett, Anamosa, pro se.

Thomas J. Miller, Attorney General, Kelli Huser and Doug Hammerand, Assistant Attorneys General, and Eric Hansen, County Attorney, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DANILSON, C.J.**

Colby Puckett appeals following judgment and sentence imposed upon his plea of guilty to second-degree murder, contending there is not a factual basis to support the plea.  In a pro se brief, Puckett also asserts his trial counsel offered ineffective assistance, which should negate his plea.

Based on the minutes of testimony and the in-court colloquy, we conclude a sufficient factual basis for the plea was established.  The record before this court is not adequate to address the issues raised in the pro se brief, but they may be asserted in a possible postconviction relief proceeding.

**I.  Background Facts and Proceedings.**

On February 1, 2013, Puckett was caring for thirteen-month-old A.M., his girlfriend's daughter.  Around 10:00 or 10:30 in the morning, A.M. began crying.  Puckett was irritated A.M. woke him, and he shook her.  After shaking A.M., Puckett noticed the child appeared dazed, her cry softened, and her color changed.  Puckett placed A.M. on the bed and left the room for a few minutes.  When he returned, A.M. was allegedly face down on the floor with her head on the entertainment center.  A.M. was coughing, blood was coming out of her mouth, one of her arms was shaking, and she was unconscious.  Puckett called his mother, who came to the house.  At 10:59 a.m., the 911 dispatch center received a call that a one-year-old child had fallen off a bed, was unconscious, and not breathing.  The child was taken by helicopter to a hospital, where it was determined her retinas were detached and there was severe swelling of the brain.  A.M. was declared brain dead on February 2, 2013.  An autopsy was performed.  The cause of A.M.'s death was head injuries, including bilateral

subdural and subarachnoid hemorrhage with extensive cerebral edema. The medical examiner concluded the death was a homicide. The minutes of testimony indicate three doctors (Drs. Suzanne Haney, John Halgren, and Patricia Kirby) would testify A.M.'s injuries were consistent with abusive head trauma.

Puckett was charged with first-degree murder and child endangerment and faced a life-without-possibility-of-parole sentence. He pled guilty to second-degree murder. At the plea hearing, the following colloquy occurred:

> THE COURT: I'm sure Mr. Murphy [defense counsel] has gone over all of this with you but we just need to make a record with respect to that. You understand that if this matter went to trial the State would have to prove that on or about the first day of February of this year that you conducted yourself in a manner—it's my understanding that the State's allegations are—or at least what the defendant's position is on this—that the child was shaken by the defendant? They would also have to prove that as a result of being shaken by the defendant that the child died; and that, additionally, the State would have to prove that the defendant acted with malice aforethought. That's my understanding of the elements of murder in the second degree.
>
> MR. HAMMERAND [prosecutor]: That is correct, Your Honor.
>
> THE COURT: Sir, is that what you did?
>
> THE DEFENDANT: Yes, Your Honor. I woke up and [A.M] was crying. I tried to get her to calm down. I didn't intend to hurt her or have her pass away.
>
> THE COURT: Okay. I understand that you didn't intend for her to die, and I don't think that's even what the State's position is. But the State's position is that you did intend to cause some harm.
>
> THE DEFENDANT: Yes, sir.
>
> MR. MURPHY: You have to say that audibly.
>
> THE COURT: Is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: There was a discussion we had in chambers with respect to the exact language that we're going to use here. And so under the—definition of malice aforethought what—the discussion was in regard to whether or not you had a fixed purpose or a design to do some physical harm to the child. And in my discussions with Mr. Murphy he indicated to me that when you

grabbed the child and shook the child, although you did not intend to kill the child, you did intend to cause some harm to that child. Is that accurate or is that not accurate?

   THE DEFENDANT: It's accurate, Your Honor.

   THE COURT: Okay. Is it agreeable with the parties the Court incorporate the minutes attached to the trial information for establishing a factual basis—additional factual basis for the guilty plea?

   MR. HAMMERAND: Yes, Your Honor. And we also filed additional minutes as well.

   THE COURT: Very well. So do you have any objection to the minutes or the additional minutes being—

   MR. MURPHY: No, Your Honor.

   THE COURT: —considered for that purpose?

   MR. MURPHY: Yes.

Further discussion occurred, and the court then asked defense counsel if there was any legal reason the plea should not be accepted. Defense counsel responded, "No, Your Honor. We've exhaustively investigated this case, not only physically but factually, and, of course, it's somewhat draconian in that 70 percent is 70 percent. I think the outcome could have been worse and that's why we agreed to this plea." On January 13, 2014, the court entered judgment upon the conviction of second-degree murder, imposing the mandatory sentence.[1] Puckett now appeals.

## II. Scope and Standard of Review.

To challenge a guilty plea, a defendant must file a motion in arrest of judgment. Iowa R. Crim. P. 2.24(3). A defendant's failure to file a motion in arrest of judgment will not bar a challenge to the plea if the failure resulted from ineffective assistance of counsel. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). However, here the State concedes the district court did not adequately

---

[1] *See* Iowa Code § 902.12 (requiring a person serving a sentence for second-degree murder to serve a minimum of seven-tenths of the maximum term).

inform the defendant that failure to file a motion in arrest of judgment waived his appeal rights. At the plea hearing the court informed Puckett, "[I]f for any reason you wish to challenge the sufficiency of these guilty plea proceedings, it will be necessary for you to file a motion in arrest of judgment within 45 days of today's date and no less than five days prior to the date scheduled for sentencing." Thus, although Puckett did not file a motion in arrest of judgment, we conclude his appeal is properly before us. *State v. Worley*, 297 N.W.2d 368, 370 (Iowa 1980) (finding that a defendant is not precluded from challenging a plea on appeal where the record does not show that anyone informed the defendant that failure to file a motion in arrest precludes an appeal on the issue).

Because ineffective-assistance-of-counsel claims are grounded in the Sixth Amendment to the United States Constitution, our review of whether counsel permitted Puckett to enter a guilty plea without a factual basis is de novo. *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

**III. Discussion.**

"A defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *Id.* We generally preserve claims of ineffective assistance for postconviction-relief actions but will consider their merits on direct appeal if an adequate record exists. *State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008).

In order to succeed on an ineffective-assistance claim, the defendant must show (1) counsel failed to perform an essential duty and (2) the failure resulted in prejudice. *State v. Adams,* 810 N.W.2d 365, 372 (Iowa 2012). "Reversal is warranted only where a claimant makes a showing of both elements." *Dempsey*, 860 N.W.2d at 868. "To demonstrate prejudice in the plea-bargaining process 'a

[claimant] must show the outcome of the plea process would have been different with competent advice.'" *Id.* at 869.

*Factual basis.* Here, Puckett asserts the record does not establish "malice aforethought," an essential element of second-degree murder. *See State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002). "Where a factual basis for a charge does not exist, and trial counsel allows the defendant to plead guilty anyway, counsel has failed to perform an essential duty." *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). "Prejudice in such a case is inherent." *Id.*

One element required for a person to commit second-degree murder is that the act of killing another person is done with malice aforethought. *State v. Lyman*, 776 N.W.2d 865, 877 (Iowa 2010). "Malice aforethought requires the actor to have 'a fixed purpose or design to do physical harm to another that exists before the act is committed.'" *Id.* (quoting *Myers*, 653 N.W.2d at 579). "It does not mean mere spite, hatred, or ill will, but does signify that state of disposition which shows a heart regardless of human life." *Id.* (citation and internal quotation marks omitted). "It is well-settled law that murder in the second degree is a general intent crime only requiring proof of malice aforethought." *Id.* "Because this element is a state of mind, circumstantial evidence is generally used to prove malice." *State v. Buenaventura*, 660 N.W.2d 38, 49 (Iowa 2003).

"'[W]e consider the entire record before the district court at the guilty plea hearing, including any statements made by the defendant, facts related by the prosecutor, the minutes of testimony, and the presentence report.'" *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014) (quoting *Schminkey*, 597 N.W.2d at 788). Here, an inference of malice is supported by the record. The defendant

acknowledged at the plea proceeding that when he grabbed the child and shook the child, he "did intend to cause some harm to that child." The minutes of testimony also include his statement to the investigating officer that "he was irritated that [the child] woke him up because he was tired."[2]

The nature and severity of the victim's injuries also support an inference of malice aforethought. Dr. Suzanne Haney told Deputy Bob McALeer the child suffered detached retinas, severe swelling of the brain, and blood around her brain. The coroner determined the death was a homicide. And three doctors would testify the injuries were consistent with abusive head trauma. Dr. Julia Goodin, the state medical examiner, also observed "multiple contusions of the forehead and scalp; multiple subgaleal contusions; bilateral subdural hemorrhages; diffuse subarachnoid hemorrhage; marked cerebral edema; retinal hemorrhages bilateral; hemorrhages along the optic nerves, bilateral; subdural hemorrhage along the spinal cord; laceration of the frenulurn and right lower lip; two small abrasions on right cheek; and abrasion of the nose." *See Myers*, 653 N.W.2d at 579-80 (noting minutes of testimony of medical examiner, who would testify the "child was shaken, slammed and that the manner of death is homicide"; the defendant's statements to officers; and the defendant's statements during plea proceeding provided factual basis); *State v. Rhode*, 503 N.W.2d 27, 39 (Iowa Ct. App. 1993) (noting malice may be inferred from

---

[2] In his pro se brief, Puckett contends the State has "no proof he set out to willingly do harm to the minor." As noted above, the defendant's own statement was that "it's accurate" he "did intend to cause some harm to that child." Moreover, his brief notes "his actions were due to the lack of his own medication and immature choices. He could no longer afford the medication to help control his anger," which is, at a minimum, an implicit acknowledgement that he was angry.

evidence that defendant intentionally slammed child's head against a hard surface causing severe head injury).

Based on the minutes of testimony and the in-court colloquy, we conclude a sufficient factual basis for the plea was established.

*Pro se claims.* Puckett's pro se brief also asserts his plea "was not knowing and intelligent, but planned, forced and coerced." He points to the court's statements noted above that refer to an in-chambers discussion. He alleges trial counsel should have challenged his competency to enter a knowing and voluntary plea, asserting he has been diagnosed with "ADHD and bipolar disorder" and "was without his medication for a long time."[3] Puckett also contends his trial counsel did not adequately investigate and that trial counsel was operating under a conflict of interest. The record before this court is not adequate to address these issues, but they may be asserted in a possible postconviction relief proceeding. *See Sate v. Thacker*, 862 N.W.2d 402, 411 (Iowa 2015).

**AFFIRMED.**

---

[3] We presume a defendant is competent to stand trial. *See Lyman*, 776 N.W.2d at 874. The defendant bears the burden to prove the defendant's incompetence by a preponderance of the evidence. *Id.*